**UNITED STATES of America**

**v.**

**Henry ANDERSON, III, Defendant.**

**Crim. A. No. 96–00054 (CRR).**

United States District Court,
District of Columbia.

April 18, 1996.

Steven D. Mellin, Assistant United States Attorney, Eric D. Holder, Jr., United States Attorney, Washington, DC, for the Government.

Christopher M. Davis, Davis & Davis, Washington, DC, for Defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

Before the Court is the defendant's Motion to Suppress Tangible Evidence and Statements and the government's Opposition thereto. The defendant alleges that the Court should suppress certain evidence because the Metropolitan Police Department (MPD) illegally stopped and searched the

defendant's vehicle, the defendant was arrested without probable cause, his statement was uttered prior to receiving *Miranda* warnings and while he was in a hospital awaiting surgery, and the search warrants issued for two apartments lacked probable cause because said warrants were based on stale information and the applicant for the warrant did not explicitly link the defendant to the two premises searched. In opposition, the government argues that the defendant has no privacy interest in the automobile or in one of the apartments searched, that the defendant's vehicle was not stopped by police, that the police had probable cause to chase and arrest the defendant, that the evidence in the car was in plain view and would have been discovered after impoundment of the vehicle, and finally that Magistrate Judge Kay issued the search warrants based on probable cause.

The Court held a hearing on April 9, 1996 to address the defendant's Motion to Suppress. Upon consideration of the filings by the parties, the entire record, and the applicable law thereto, the Court denied the defendant's Motion to Suppress Tangible Evidence and Statements. The Court's reasoning for its ruling is set forth in the instant Memorandum Opinion.

## THE APRIL 9, 1996 SUPPRESSION HEARING

At the April 9, 1996 suppression hearing, the Court heard testimony by Officer Alan James Hall, Officer Kenneth Lewis Hargrove, Sergeant Joseph Thomas, and Sergeant Freddy Johnson, all members of the D.C. Metropolitan Police Department (MPD). Sergeant Thomas testified that on the evening of January 31, 1996, he responded to a radio call received in his marked cruiser reporting gunshots fired in the area of 29th and S Streets in Southeast Washington, D.C. Upon reaching the general area, Thomas did not see any activity, but he did encounter a female who directed him to 28th Place and S Streets, S.E. Thomas drove to that location via Texas Street, made a left turn on S Street, then, upon hearing rapid gunfire, stopped and turned his head to protect himself. According to Thomas, he then looked ahead and saw a vehicle proceeding toward him with its headlights switched off. Thomas testified that the vehicle stopped abruptly and the driver "bailed" out of the car and attempted to flee the scene, leaving the motor running in the car he abandoned. Sergeant Thomas testified that, based on his observations, he suspected that the fleeing individual was connected to the gunfire. Accordingly, Thomas exited his police cruiser and proceeded to chase the individual on foot. The chase stopped when the individual collapsed after being shot by another officer. Thomas identified the defendant in Court as that individual.

Officer Hargrove testified that he examined the defendant's vehicle, a 1983 Oldsmobile, after the chase ended. He testified that the Oldsmobile was parked at an angle, on the street, with the engine running. According to Hargrove, a 9 mm pistol was in plain view on the seat. Hargrove recovered a registration statement from the vehicle, entered as defense Exhibit 3, which indicated that the vehicle was registered to the defendant.

Officer Hall testified that he interviewed the defendant, whom he identified in Court, at the hospital while the defendant was awaiting treatment for a gunshot to his thigh. According to Hall, the defendant stated that he resided at 1801 28th Place, S.E. Hall also testified that he verbally informed the defendant of his *Miranda* rights at 11:50 p.m., although the officer did not read the rights directly from a card. Hall testified that he did not ask the defendant to sign a waiver card because of all the activity at the hospital. Afterwards, according to Hill, the defendant described the events of that evening, including: that the defendant had imbibed a pint of liquor; that he was driving home when three individuals began shooting at him; that he shot back with a 9 mm pistol; that he then began to drive off but, upon seeing a police car, left the gun on the front seat of his vehicle and began running with his hands up until shot by police. Hall also testified that the defendant did not appear to be in a stupor, to be incoherent, or intoxicated, and that the defendant's speech was not slurred.

Officer Johnson testified that he was present at the scene on the evening of January 31, 1996, after the shooting of the defendant.

He observed the defendant's abandoned vehicle, as well as a .25 caliber pistol and a canister of cocaine base discovered near where the defendant fell. According to Johnson, he participated in executing a search warrant on an apartment at 1801 28th Place, S.E. Johnson testified that the MPD recovered from a bedroom and closet in that apartment an assault rifle, an ammunition clip for the rifle, an empty box for a 9 mm pistol, mail addressed to the defendant at the apartment, and lidocaine, which Johnson described as a cutting agent for cocaine. According to Johnson, the defendant's mother stated that two months prior to the execution of the warrant, the defendant resided in the bedroom searched and that some of the defendant's belongings were still in the bedroom.

## DISCUSSION

### I. THE MPD DID NOT STOP THE DEFENDANT WHILE HE WAS DRIVING THE VEHICLE, THEREFORE THE DEFENDANT'S MOTION TO SUPPRESS BASED ON THE ALLEGED ILLEGALITY OF THE VEHICLE STOP IS WITHOUT MERIT.

 Based on the testimony of Sergeant Thomas, the Court finds that the defendant abandoned his car and fled the scene of his own volition, and that the police did not seize the defendant or make a traffic stop. Sergeant Thomas impressed the Court as a credible and reliable witness. Therefore, the defendant's first argument is entirely without merit. Furthermore, even if the MPD had made a display of authority sufficient to cause the defendant to stop his vehicle, the defendant's flight from the car would prevent him from prevailing on this argument. *See California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1551–52, 113 L.Ed.2d 690 (1991) (In order for there to be a seizure, the defendant must have complied with any show of authority directing the defendant not to leave).

### II. THE CHASE AND ARREST OF THE DEFENDANT WAS NOT ILLEGAL.

 Based on the credible testimony of Sergeant Thomas, the Court finds that the MPD had probable cause to pursue and arrest the defendant. Officer Thomas, responding to a radio call regarding gunshots in the area, as well as hearing rapid gunfire himself, observed the defendant driving down the street with no headlights. Upon seeing Sergeant Thomas driving in a marked police cruiser, the defendant abandoned his car in the street, left the engine running, and he fled from the scene. Based on these facts, the Court finds that the MPD had probable cause to pursue and arrest the defendant.

### III. THE DEFENDANT DOES NOT HAVE STANDING TO OPPOSE THE SEARCH OF THE CAR, AND, EVEN IF HE DID, THE PISTOL WAS IN PLAIN VIEW AND THE SEARCH WAS MADE INCIDENT TO THE DEFENDANT'S ARREST.

 The government argues that the defendant lacks standing to oppose the search of the car because the defendant had no privacy interest in his vehicle, which he abandoned upon seeing Sergeant Thomas. While eschewing the "standing" language, the Supreme Court held in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), that a defendant's Fourth Amendment rights are not infringed where the defendant has no "legitimate expectation of privacy in the invaded place." 439 U.S. at 143, 99 S.Ct. at 430. Accordingly, in *Rakas,* the Supreme Court affirmed the denial of a motion to suppress the fruits of an illegal search where the movants were merely passengers in a vehicle who "asserted neither a property nor a possessory interest in the automobile." 439 U.S. at 148, 99 S.Ct. at 433. In the present case, although the defendant had a property interest in the car while driving it (as the vehicle was registered in the defendant's name and the defendant was exercising control over the vehicle while driving it), the defendant abandoned his vehicle after seeing Sergeant Thomas. The defendant did not park the vehicle on the side of the road and lock it, but in fact abruptly stopped his vehicle at an angle to the curb and fled, leaving the vehicle in the street with the

motor running. "When an individual abandons property, he forfeits any reasonable expectation of privacy in it; consequently, police may search it without a warrant." *U.S. v. Lewis*, 921 F.2d 1294, 1302 (D.C.Cir. 1990). Accordingly, the defendant has no standing to contest the search of the automobile because he had no expectation of privacy after abandoning it.

■ Notwithstanding the defendant's lack of a privacy interest in the vehicle, the search of the automobile was legal because the MPD observed a 9 mm weapon in plain view on the seat of the Oldsmobile. "It is well settled that visual observation by a law enforcement officer situated in a place where he has a right to be is not a search within the meaning of the fourth amendment." *United States v. Coplen*, 541 F.2d 211, 214 (9th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 791 (1977). The Supreme Court has upheld "warrantless seizure of incriminating evidence" where an item is in plain view and the item's "incriminating character" is "immediately apparent." *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990). There can be no dispute as to the immediately incriminating character of the 9 mm pistol on the seat of a car, abandoned by an individual who fled from the police, in an area where gunfire had been reported. Exigent circumstances further justified the seizure of the pistol in plain view, as the officers hardly could have left the vehicle running, with a pistol in plain view on the seat, where the driver of the vehicle was under arrest and en route to a hospital. *See Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980). Finally, the defendant's argument also fails because the police are permitted to search the defendant's vehicle incident to his arrest. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

### IV. THE COURT WILL NOT SUPPRESS STATEMENTS THE DEFENDANT MADE AT THE HOSPITAL BECAUSE THE DEFENDANT KNOWINGLY AND VOLUNTARILY WAIVED HIS MIRANDA RIGHTS.

■ The defendant argues that the statements he made at the hospital regarding the events taking place on the evening of January 31, 1996 were not preceded by *Miranda* warnings. Officer Hall testified, however, that he informed the defendant of his *Miranda* rights at 11:50 p.m. and that the defendant voluntarily made the statements after being informed of his rights. The Court found Officer Hall's testimony credible and accordingly found that the government met its burden of proving that the defendant voluntarily and knowingly waived his *Miranda* rights.

After hearing the testimony of Officer Hall, counsel for the defendant raised an argument not previously set forth in the pleadings, alleging that the defendant did not have full awareness of the rights being waived because the defendant was intoxicated at the time he made the statements. Defense counsel introduced hospital records at the hearing which, according to defense counsel, indicated that the defendant's blood alcohol level exceeded the level permissible for driving a vehicle. However, the defendant presented no evidence regarding the extent of his impairment and whether said impairment was sufficient to prevent a knowing and voluntary waiver his *Miranda* rights. To the contrary, Officer Hall testified that the defendant appeared fully cognizant and unimpaired.

Additionally, the defendant's prior experience with the criminal justice system suggests his awareness of his Miranda rights, as well as the effect of a waiver. *See Fare v. Michael C.*, 442 U.S. 707, 726, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979). Magistrate Judge Kay's Detention Memorandum, filed February 16, 1996, notes that the defendant "has seven convictions in Maryland, Virginia, and the District of Columbia, dating back to 1985, including convictions under the Controlled Substance Act, and the Bail Reform Act, theft, and larceny...." Det. Mem. at 4. Accordingly, based on the testimony of Officer Hall, as well as the defendant's prior experience with the criminal justice system, the Court finds that the government proved by a preponderance of the evidence that the defendant knowingly and voluntarily waived

his *Miranda* rights prior to making the statement.

## V. THE SEARCH WARRANT FOR 1801 28TH PLACE, S.E., APT. 1, WAS BASED ON SUFFICIENT PROBABLE CAUSE, AND THE "GOOD FAITH" EXCEPTION APPLIES.

The defendant argues that the search warrants issued for 1801 28th Place, S.E., Apt. 1, and 2700 Texas Avenue, S.E., lacked probable cause because the warrants were obtained at least 28 days after the defendant's arrest and the application for the warrants failed to link the premises searched to the defendant. As an initial matter, the Court will not address the sufficiency of the warrant for the Texas Avenue apartment because the government informed the Court that it will not attempt to introduce as evidence any items recovered from the search of the Texas Avenue apartment. Accordingly, the defendant's argument regarding the Texas Avenue warrant is moot.

In order to prevail on a motion to suppress the warrant issued for 1801 28th Place, S.E., the defendant must first establish that he had a legitimate expectation of privacy in the area searched. *See United States v. Zabalaga*, 834 F.2d 1062, 1065 (D.C.Cir.1987). Although the Court ruled at the hearing that the defendant did not meet that burden, the Court has reconsidered this matter after reviewing the testimony provided at the hearing. Based on the testimony adduced at the hearing, the defendant represented to the MPD that he resided at 1801 28th Place, S.E., and the MPD recovered mail addressed to the defendant at that address. Therefore, the defendant met his burden of demonstrating his privacy interest in the apartment.[1]

The defendant alleges that the warrant executed on 1801 28th Place, S.E. was invalid because the affidavit in support of said warrant did not explicitly link the defendant to the residence. The defendant also argues that because 28 days elapsed between

the arrest of the defendant and the execution of the search warrant, the search warrant is somehow invalid. The Court disagrees with both arguments. Although unartfully worded, the affidavit sufficiently links the defendant to the premises and explains why evidence would remain at the premises for some time after the suspect's arrest. The affidavit states:

> It is the undersigned affiant's experience that premises linked to persons in possession of handguns contain papers relating to the ownership of the gun ... It is the experience of the undersigned affiant to believe that the above items are not normally disposed of after the commision [sic] of a crime and are likely to be found in the location to be searched. It is for these reasons that the affiant is requesting that a Search Warrant be issued for [1801 28th Place, S.E., Apt. 1.]

Affidavit of Officer Melvin Key and Application for Search Warrant, Feb. 27, 1996. The affiant indicated that the defendant was linked to 1801 28th Place, S.E. *See United States v. Dale*, 991 F.2d 819, 845 (D.C.Cir.) (Affidavits for search warrants must be read "'in a commonsense and realistic fashion'" as "'[t]hey are normally drafted by nonlawyers in the midst and haste of a criminal investigation'") (quoting *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)), *cert. denied*, —— U.S. ——, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993). Additionally, the affiant explained why the delay in applying for the search warrant was not relevant when searching for evidence relating to gun possession. In this case, the defendant was incarcerated from the moment he was arrested, therefore it is reasonable to assume that any evidence existing on January 31, 1989 would not have been removed from the premises by the defendant. *See, e.g., United States v. Dozier*, 844 F.2d 701, 707 (9th Cir.) (Mere lapse of time not controlling where there is a reason why evidence may remain at the premises), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988). Based on the Key Affi-

---

1. At the hearing, Officer Johnson provided hearsay testimony indicating that the defendant no longer lived at the apartment. At trial, the defendant introduced as evidence the mail addressed to the defendant at 1801 28th Place, S.E., and such mail was postmarked in 1994.

davit, the Court finds that Magistrate Judge Kay had probable cause to issue the warrant.[2]

■ Finally, the "good faith" exception established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would cure any technical flaw in the warrant issued for 1801 28th Place, S.E. The defendant alleges that the affiant intentionally or recklessly omitted facts from the affidavit, but the defendant did not present any evidence at the hearing suggesting that the affiant omitted any facts material to the issuance of the search warrant. Accordingly, the good faith exception would apply in this case.

## CONCLUSION

For the reasons more specifically discussed above, the defendant's Motion to Suppress Tangible Evidence and Statements was denied by an oral Order of the Court on April 9, 1996. The Court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## *ORDER*

For the reasons set forth in the Memorandum Opinion of even date herewith, it is, by this Court, this 18th day of April, 1995,

ORDERED that the defendant's Motion to Suppress Tangible Evidence and Statements shall be, and hereby is, DENIED.

---

**2.** The defendant also argues that the affiant lacked the experience necessary to make the statements made in the Affidavit. The Court regards this argument as specious, at best, given the affiant's five years of experience with the MPD.