OPINION
VANASKIE, District Judge.
Defendant Roderick Strickland was arrested by officers of the Chester County, Pennsylvania Adult Probation and Parole Department on August 13, 2002, for violating the terms of his parole. Eight months later, while Strickland was still in custody but before his parole was revoked, parole officers conducted a warrantless search of Strickland’s residence and discovered multiple firearms and ammunition. In November of 2003, Strickland admitted that the weapons and ammunition found at his home constituted a parole violation, and the state court revoked his parole. Strickland was then indicted by a federal grand jury on charges of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1). Strickland’s motion to suppress the evidence seized as a result of the warrantless search was summarily denied by the District Court. Strickland subsequently pled guilty, and received a sentence of 63 months imprisonment. As authorized by his conditional plea agreement, Strickland has appealed the District Court’s 'order denying his motion to suppress. Because we conclude that the state parole agents had reasonable suspicion to conduct the search, we will affirm.
*775 I.
On December 20, 2000, Strickland was sentenced by the Court of Common Pleas for Chester County to a prison term of 3 to 23 months imprisonment plus probation of one year on charges of simple assault and terroristic threats. He was paroled on the same date, and came under the supervision of the Chester County Adult Probation and Parole Department.
On August 13, 2002, Chester County Probation and Parole Officer Michelle Miller filed a petition to issue a bench warrant, schedule a hearing, and find probation/parole violations based on Strickland’s alleged failure to comply with the terms of his parole. The petition did not claim that Strickland possessed firearms at his home, though it alleged, among other violations, that Strickland was discharged from a domestic violence program “due to being in possession of a weapon.”[1] Appendix (“App.”) 187. The petition was granted and a bench warrant was issued.
On August 16, 2002, Chester County warrant enforcement officers entered Strickland’s residence, which he shared with his father, to execute the bench warrant. While searching for Strickland, the officers spotted “what appeared to be a locked gun cabinet, machine gun shells, military paraphernalia, [and] some military dolls.” App. 81. Neither Strickland nor his father were present at the residence. Later that day, Strickland was taken into custody at his girlfriend’s apartment. He has remained in custody ever since.
At the time of Strickland’s arrest, the Chester County Probation and Parole Department, an unarmed agency, had suspended searches while its officers received additional training. In October of 2002, however, while searches by the Department were still suspended, Officer Miller informed the state trial judge who was assigned to Strickland’s case that there was reason to suspect that weapons were in Strickland’s residence and that the Department wanted to conduct a search of it before Strickland was released.
On January 27, 2003, Officer Miller was notified by the Chester County District Attorney’s Office that Strickland’s girlfriend, Rosie Jiminez, had reported that Strickland kept a shotgun wrapped in a trash bag underneath a dresser at his residence and an AK-47 rifle on a shelf in his basement. The record does not specify when or how Jiminez obtained the information. Jiminez also turned in a loaded handgun that she said belonged to Strickland. Two days later, Jiminez gave the Chester County District Attorney’s office a letter written by Strickland while he was in prison asking her to purchase an AR-15 assault rifle for him.
On April 14, 2003, nearly eight months after Strickland was arrested, Officer Miller sought permission from her supervisor, Richard Marinari, to search Strickland’s residence “to ensure compliance with his parole.”[2] App. 194. Marinari, in turn, requested approval from the Department’s Deputy Director, which was granted.
Chester County probation and parole officers conducted a search of Strickland’s residence on April 15, and 16, 2003. The officers discovered multiple firearms, including a shotgun and an AK-47 rifle in *776 the locations described by Jiminez, and ammunition. The pending state court petition to revoke parole was then amended to include possession of the contraband found at the residence.
During a parole revocation hearing conducted on November 20, 2003, Strickland admitted he owned the firearms seized at his residence. Strickland was found to have violated the terms of his state parole, parole was revoked, and he was sentenced to the balance of his prison sentence. He was ordered to be re-paroled effective December 16, 2003, with a condition that his residence be searched again prior to his release.
On April 27, 2004, a grand jury in the Eastern District of Pennsylvania charged Strickland with two counts of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). The first count was related to the firearms and ammunition found at Strickland’s residence, while the second count was connected to the loaded handgun Jiminez had provided to the District Attorney’s Office.[3]
Strickland moved to suppress the physical evidence recovered from his residence, arguing, inter alia, that the parole officers lacked reasonable suspicion to conduct a warrantless search. The District Court conducted a hearing on the motion on July 20, 2004, at which Officers Miller and Marinari testified. After hearing argument from counsel and considering the evidence set forth above, the District Judge denied Strickland’s suppression motion.
Pursuant to a plea agreement, Strickland pled guilty to both counts of being a felon in possession of a firearm and ammunition. In his plea agreement, Strickland preserved the right to appeal the District Court’s denial of his suppression motion. The District Court entered judgment on August 3, 2005. This appeal followed.
II.
We exercise appellate jurisdiction under 28 U.S.C. § 1291. In reviewing a district court’s denial of a motion to suppress, we review the underlying factual findings for clear error and exercise plenary review over the district court’s application of the law to those facts. United States v. Lockett, 406 F.3d 207, 211 (3d Cir.2005).
A.
In Griffin v. Wisconsin, 483 U.S. 868, 873-75, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Supreme Court found that the “special need” of a state’s probation system to supervise a probationer permitted a state to empower a probation officer to conduct a warrantless search of the probationer’s home on a standard below probable cause.[4] In reaching its conclusion, the *777 Court stressed that a warrant requirement would interfere with the probation system by delaying investigations into suspected violations and effectively establishing a magistrate, rather than a probation officer, as the probationer’s supervisor. Id. at 876, 107 S.Ct. 8164.
The Court also concluded that a probable cause requirement would unduly disrupt the probation regime by restricting a probation officer’s ability to supervise a probationer. Id. at 878-79, 107 S.Ct. 3164 (observing that “it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts”). The Court found this to be especially necessary in situations involving drugs or illegal weapons due to the risks they pose to the probationer and society. Id. at 879, 107 S.Ct. 3164.
Relying on Griffin, we have determined that Pennsylvania may empower a parole officer to conduct a warrantless search of a parolee’s property based on reasonable suspicion that the parolee has violated a condition of parole. United States v. Baker, 221 F.3d 438, 443-45 (3d Cir.2000); United States v. Hill, 967 F.2d 902, 907-11 (3d Cir.1992). We have also concluded that a warrantless search is proper even after the parolee is in custody. Hill, 967 at 910-11.[5]
This case does not present the question of the precise parameters of the special needs justification for a warrantless search of a parolee’s residence. Nor does it present a challenge to the Pennsylvania statute authorizing county probation and parole officers to conduct searches of parolees’ real property based upon reasonable suspicion. See 61 Pa. Cons.Stat. Ann. § 331.27b(d)(2). Instead, Strickland questions whether the evidence that he possessed firearms at his residence was too stale to supply the requisite reasonable suspicion for a warrantless search otherwise authorized by Pennsylvania law.[6]
B.
Pennsylvania authorizes county parole officers to conduct a warrantless search of a parolee’s property “if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.” 61 Pa. Cons.Stat. Ann. § 331.27b(d)(2). In deciding whether reasonable suspicion exists, “we consider the totality of the circumstances to determine whether the ‘officer has a particularized and objective basis for suspecting legal wrongdoing.’ ” United States v. Williams, 417 F.3d 373, 376 *778 (3d Cir.2005) (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). Furthermore, a parole officer’s decision to search a parolee’s home “must be based on ‘specific facts.’ ” Baker, 221 F.3d at 444.
The parole officers had a particularized basis for suspecting that Strickland possessed firearms and ammunition at his residence. While attempting to execute a bench warrant for Strickland, warrant enforcement officers observed ammunition and what appeared to be a gun cabinet in Strickland’s residence. This information was corroborated by Strickland’s girlfriend, who provided specific details about the types of firearms stored at Strickland’s residence and where they were located. She also proved to be a reliable source when she turned over a loaded handgun belonging to Strickland and a letter by Strickland asking her to purchase an assault rifle. Considering all this information, the parole officers possessed reasonable suspicion that Strickland kept firearms at his residence in violation of the terms of his parole.
Strickland complains that the information regarding firearms at his residence was too stale by the time the parole officers conducted the search to satisfy the reasonable suspicion standard. Though a court should consider the age of information in determining whether there is adequate suspicion justifying a search, the court must ultimately determine whether the evidence is likely to be still found at the searched property. United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir.2002). “ ‘The likelihood that the evidence sought is still at the place to be searched depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched.’ ” United States v. Williams, 124 F.3d 411, 420 (3d Cir.1997) (quoting United States v. Tehfe, 722 F.2d 1114, 1119 (3d Cir.1983)).
In this case, Strickland was arrested the same day the warrant enforcement officers observed ammunition and what appeared to be a gun cabinet. He remained in custody through the search of his residence. The contraband in question (guns and ammunition) was not perishable. Moreover, the place to be searched, Strickland’s residence, is recognized as a likely location of firearms. See United States v. Jones, 994 F.2d 1051, 1056 (3d Cir.1993) (observing that firearms are likely to be stored at a residence). Consequently, there was no reason for the parole officers to believe that the gun cabinet and ammunition were removed from the residence.[7] See United States v. Gettel, 474 F.3d 1081, 1086 (8th Cir.2007) (finding two-month-old evidence that defendant possessed stolen property at his residence was not stale because defendant had little time to dispose of the evidence as he had been incarcerated for a substantial portion of the time between the theft and the search); United States v. Anderson, 924 F.Supp. 286, 291 (D.D.C.1996) (finding 28-day-old evidence related to gun possession at an apartment used by the defendant was not *779 stale because the defendant was incarcerated and did not have an opportunity to remove the evidence).
Similarly, there is no indication that the firearms reported by Strickland’s girlfriend were removed from the house. The suspected wrongful conduct, possession of weapons, is by its nature a continuous activity. See United States v. Maxim, 55 F.3d 394, 397 (8th Cir.1995). Indeed, that Jiminez was holding a handgun for Strickland and he was trying to have her purchase a weapon for him indicates that Strickland was engaged in a “continuing offense” of gathering firearms. See Zimmerman, 277 F.3d at 434 (suggesting that adequate suspicion may be based on dated information if there is evidence of a continuous effort to obtain contraband). We therefore conclude that the information, taken collectively, was not so dated as to eliminate the parole officers’ reasonable suspicion that firearms were present in Strickland’s residence.
III.
For the foregoing reasons, we will affirm the District Court’s denial of Strickland’s motion to suppress.

. The weapon was a lockblade knife.

. Under Pennsylvania law, a county probation and parole officer is authorized to conduct searches based upon reasonable suspicion that contraband or other evidence of violations of conditions of supervision may be found. 61 Pa. Cons.Stat. Ann. § 331.27b(d)(2). Absent exigent circumstances, however, the officer must obtain approval of a supervisor before conducting the search. § 331.27b(d)(3). Officer Miller presented all the information set forth above to her supervisor.

. Strickland's father was indicted separately on charges that he had procured a firearm for his son. He eventually entered a guilty plea. United States v. Strickland, Crim. No. 04-831 (E.D.Pa. Dec. 30, 2004).

. Griffin involved a search by a probation officer to investigate whether a probationer was in violation of his probation restrictions. Griffin, 483 U.S. at 873-80, 107 S.Ct. 3164. In United States v. Knights, 534 U.S. 112, 122, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), the Supreme Court approved a warrantless search of a probationer’s home by a sheriff's deputy when the deputy suspected the probationer was engaging in criminal activity and the probationer consented to a search provision as a condition of his probation. The Knights Court emphasized that the probation search condition was a “salient circumstance” for its conclusion. Id. at 118, 122 S.Ct. 587. Though Appellee suggests that Strickland agreed to a search provision as a condition of his parole, (Appellee’s Br. at 18 n. 4), the record does not contain the agreement. Strickland, for his part, does not address whether he agreed to a search provision. Because we find that the parole officers had reasonable suspicion to conduct a warrantless search of Strickland's residence under Griffin, we need not resolve whether Knights also applies to this case.

. Other Courts of Appeals are in agreement that the incarceration of the parolee does not impose upon parole authorities the need to procure a warrant before conducting a search to obtain evidence of violations of conditions of supervision. See, e.g., United States v. Trujillo, 404 F.3d 1238, 1243-44 (10th Cir.2005); United States v. Jones, 152 F.3d 680, 684—87 (7th Cir.1998); Latta v. Fitzharris, 521 F.2d 246, 252 (9th Cir.1975).

. In passing, Strickland concluded in his brief that the justifications for a warrantless search in Griffin are lacking in this case. (Appellant’s Br. at 15-16.) Appellant, though, did not pursue this argument before the panel, conceding that the reasonable suspicion standard should apply. Because Appellant failed to adequately raise the issue, it will be deemed waived. See Commonwealth of Pa. v. HHS, 101 F.3d 939, 945 (3d Cir.1996) (arguments briefly mentioned in conclusory manner are deemed waived); Simmons v. City of Phila., 947 F.2d 1042, 1066 (3d Cir.1991) ("[A] passing reference to an issue in a brief will not suffice to bring that issue before this court on appeal.”).

. Of course, Strickland shared his residence with his father, who had an opportunity to remove the firearms from the property. The parole officers, though, did not know that Strickland's father had a role in acquiring some of the firearms for his son, and so did not suspect he had a motive to dispose of them. At the time of the search, the parole officers simply believed Strickland kept firearms at the house and had no opportunity to dispose of them. The parole officers also had information that Strickland was then trying, through a request to Jiminez, to obtain an additional firearm, which further indicated that Strickland was interested in getting firearms rather than disposing of them. Based on this analysis, we hold that the officers reasonably suspected the firearms were still present at the residence when they conducted their search.