Marcel KILLEBREW, Petitioner–
Appellant,

v.

Jeffrey ENDICOTT, Respondent–Appellee.

No. 92–2159.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1992.

Decided April 16, 1993.

Rehearing Denied June 8, 1993.

Patricia A. Fitzgerald (argued), Mount Horeb, WI, for petitioner-appellant.

Jerome S. Schmidt, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for respondent-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and LAY, Senior Circuit Judge.*

RIPPLE, Circuit Judge.

Marcel Killebrew appeals from a denial of his petition for a writ of habeas corpus. *See* 28 U.S.C. § 2254 (1988). He claims that his state conviction for armed robbery violates the Federal Constitution. Specifically, Mr. Killebrew alleges three constitutional violations. First, he claims that the trial court erred in admitting an inculpatory statement which, in his view, should have been suppressed because it was elicited absent *Miranda* warnings. Additionally, Mr. Killebrew claims that his Sixth Amendment right to effective assistance of counsel was violated both by his first attorney's failure to object to a suggestive identification at his preliminary hearing, and by his second attorney's failure to object to an in-court identification that he asserts was tainted by the earlier suggestive identification. For the reasons that follow, we now affirm.

I

BACKGROUND

On October 24, 1988, an Anchor Savings and Loan Association in Madison, Wisconsin, was robbed at gunpoint. The robbery was recorded by bank surveillance cameras. One of the bank customers followed the robber as he fled on foot from the bank. The robber disappeared between two buildings in an apartment complex where, it was later established, Mr. Killebrew lived. Later that same evening, the police showed Cheri Tracy, the teller who was the victim, a photo array of suspects that included a photograph of Mr. Killebrew. Tracy was unable to identify positively the robber at that time. The next day, the *Wisconsin State Journal* printed one of the bank surveillance photographs of the robber. Deputy Sheriff Hundt called the Madison Police Department and identified the photograph in the newspaper as Mr. Killebrew. Deputy Hundt had been a jail guard during a previous incarceration of Mr. Killebrew.

Around midnight on October 29, after learning that he was wanted for the robbery, Mr. Killebrew turned himself in to the Madison Police Department. He was arrested and held in custody. At no time was Mr. Killebrew advised of his *Miranda* rights. About ten hours after Mr. Killebrew's arrest, and while he was confined at the jail, Detective McCoy approached him about the Anchor robbery. Specifically, Officer McCoy "told" Mr. Killebrew that he wanted to know if anyone else had been involved and where the money, gun, and clothing used during the robbery could be found. Additionally, Detective McCoy told Mr. Killebrew that, if he cooperated, the district attorney and any judge before whom Mr. Killebrew might appear would be informed of his cooperation. According to Detective McCoy, Mr. Killebrew said that no one else was involved and then asked for an attorney.

Ten days later, at the preliminary hearing, Tracy, the bank teller, identified Mr. Killebrew as the robber. She was the only wit-

* The Honorable Donald P. Lay of the United States Court of Appeals for the Eighth Circuit is sitting by designation.

ness to testify at the hearing. Before she testified, she had seen Mr. Killebrew in handcuffs and jail garb, as he was escorted into the courtroom by police. Additionally, Mr. Killebrew was seated at the defense table and was the only black man in the courtroom when Tracy identified him. Later, Tracy again identified Mr. Killebrew at the trial.

## II

## EARLIER PROCEEDINGS

At trial, Mr. Killebrew moved to suppress the inculpatory statement that no one else was involved. He argued that this statement had been obtained in violation of his Fifth Amendment *Miranda* rights. The trial court denied his motion and allowed Detective McCoy to testify concerning the statement. Attorney Kravat represented Mr. Killebrew during his preliminary hearing. Attorney Kravat did not attempt either to suppress or to object to Tracy's in-court identification at the preliminary hearing. After the hearing, Mr. Killebrew changed counsel and he was represented by attorney Watson during the trial. Attorney Watson did not attempt to have Tracy's in-court identification suppressed at trial. However, Watson did cross-examine Tracy extensively about the reliability of the identification. Mr. Killebrew was convicted of armed robbery and sentenced to twenty years' imprisonment.

Mr. Killebrew appealed to the Wisconsin Court of Appeals, which affirmed his conviction. 163 Wis.2d 525, 472 N.W.2d 247. Specifically, the state appellate court found that Mr. Killebrew's Fifth Amendment rights had been violated by the admission of the statement made to Officer McCoy. However, the appellate court found the error was harmless because of the cumulative effect of the evidence presented at trial. Additionally, the state appellate court held that both Mr. Killebrew's preliminary hearing and trial counsel had performed well within acceptable standards of a reasonable attorney. Accordingly, the court rejected his ineffective assistance of counsel claims. Mr. Killebrew next appealed to the Wisconsin Supreme Court which denied review. 475 N.W.2d 584.

After exhausting available state court review, Mr. Killebrew sought habeas corpus relief in the federal district court. He alleged three constitutional violations in his habeas petition. First, he alleged that the statement that no one else was involved should have been suppressed under *Miranda*. Second, he claimed that his Sixth Amendment right to effective assistance of counsel was violated because attorney Kravat failed to move to suppress Tracy's identification at the preliminary hearing. Finally, Mr. Killebrew argued that his Sixth Amendment right to effective assistance of counsel was violated because attorney Watson failed to object to Tracy's in-court identification at trial on the ground that it was tainted by the prior identification.

The district court agreed with the state appellate court that Mr. Killebrew's statement to Detective McCoy had been obtained in violation of *Miranda* and its progeny. Specifically, the district court held that a reasonable officer would have known that Detective McCoy's comments were likely to elicit an incriminating response and therefore amounted to interrogation for *Miranda* purposes. Nonetheless, the district court also agreed with the state appellate court that the error was harmless in light of the other evidence presented at trial. Additionally, the district court found both of Mr. Killebrew's ineffective assistance of counsel claims to be without merit. The court determined that neither counsels' performance was deficient. The court further noted that, even had either counsel been deficient, there was no actual prejudice because there was no substantial likelihood of misidentification. Mr. Killebrew appeals all three challenges to this court.

## III

## ANALYSIS

### A. *Miranda Claim*

Mr. Killebrew renews his contention that the state trial court committed reversible error of constitutional magnitude in allowing Detective McCoy to testify regarding his statement that no one else had been involved. At trial Mr. Killebrew moved to suppress the statement on the ground that it was made

while he was in custody and under interrogation without the benefit of *Miranda* warnings. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Further, submits Mr. Killebrew, because confessions are so heavily weighted by a jury, the error cannot be considered harmless beyond a reasonable doubt. In contrast, the state argues that the admission was not error at all. Rather, the state contends that Officer McCoy never "asked" or "interrogated" Mr. Killebrew about anything and that he merely "informed" Mr. Killebrew of what his later interrogation would entail. According to the state, Mr. Killebrew took it upon himself and "volunteered" the information. Alternatively, the state argues that any error in admission was harmless in light of three identifications and the submission into evidence of the bank surveillance photographs.

Both the Wisconsin appellate court and the federal district court concluded that the trial court had committed harmless error in admitting Mr. Killebrew's pre-*Miranda* warning, inculpatory statement. We agree. In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court held that:

> *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perception of the suspect, rather than the intent of the police.

*Id.* at 300–01, 100 S.Ct. at 1689–90 (footnotes omitted). In the present case, the state trial court denied Mr. Killebrew's motion to suppress the statement and commented:

> [F]rom his testimony, I don't understand him to have posed a question. I think he came there and stated his purpose.

Which, very honestly, I think is good police work. But I also think it's fair.

Tr. of Apr. 12, 1989 at 20. It appears that the trial court was under the misapprehension that only express questioning would invoke the *Miranda* protections. That is not the law. Under *Innis,* the issue is whether a reasonable objective observer would believe that the encounter was "reasonably likely to elicit an incriminating response from the suspect" and therefore constituted the "functional equivalent" of interrogation. *Innis,* 446 U.S. at 300–01, 100 S.Ct. at 1689–90.

■ Detective McCoy's "comments" were not made incident to arrest. The comments were made in a conversation initiated by the detective ten hours after Mr. Killebrew was arrested. Officer McCoy did not make the comments to Mr. Killebrew in his cell, but removed Mr. Killebrew to a special room used for interviewing. Finally, we cannot accept that Mr. Killebrew spontaneously "volunteered" that no one else had been involved. Officer McCoy told Mr. Killebrew that he would inform the district attorney and the judge of any cooperation. An objective observer would not be surprised to hear Mr. Killebrew respond with an incriminating statement. Therefore, the statement was tainted by Officer McCoy's failure to give the requisite *Miranda* warnings. Accordingly, we agree with the Wisconsin state appellate and federal district courts that allowing Detective McCoy's testimony regarding the statement was error. Nonetheless, we conclude that the error was harmless.

■ Generally, to constitute harmless error, a federal constitutional error must be harmless beyond a reasonable doubt. *Arizona v. Fulminante,* —— U.S. ——, ——, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). This court recently utilized a different, less demanding standard of harmless error in collateral review of *Miranda* warnings. *Brecht v. Abrahamson,* 944 F.2d 1363, 1375 (7th Cir. 1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 2937, 119 L.Ed.2d 563 (1992). The correctness of this approach is currently before the Supreme Court of the United States.[1] How-

---

1. The Supreme Court also has granted certiorari to consider whether *Miranda* claims that a petitioner has had a full and fair opportunity to raise in state court should be reviewable at all on

ever, because the error was harmless beyond a reasonable doubt, we need not await the Supreme Court's decision in that case. In addition to Mr. Killebrew's inculpatory statement, the prosecution presented the following evidence at trial: Tracy's in-court eyewitness identification of Mr. Killebrew at trial; Deputy Hundt's identification; an identification from a bank customer who was at the next window during the robbery and who followed the robber to the area of Mr. Killebrew's home; the bank surveillance photographs; and the initial booking sheet description of Mr. Killebrew. We cannot accept that, had the statement been suppressed, the jury would have exonerated Mr. Killebrew. Accordingly, although allowing Detective McCoy to testify regarding Mr. Killebrew's "admission" that no one else was involved was error, it was, beyond a reasonable doubt, harmless error.

## B.  *Ineffective Assistance of Counsel*

██ Mr. Killebrew also argues that his conviction should be reversed because he was the victim of constitutionally deficient assistance of counsel both at his preliminary hearing and at trial. "Defendants' counsel are presumed effective." *United States v. Booker*, 981 F.2d 289, 292 (7th Cir.1992). Thus, "a defendant bears a heavy burden when attempting to establish that his counsel was ineffective." *United States v. Donaldson*, 978 F.2d 381, 394 (7th Cir.1992). To prevail on either ineffective assistance of counsel challenge, Mr. Killebrew must show that his representation fell below an objective standard of reasonableness, *and* that, because of that ineffective representation, the result of the trial is unreliable because the proceedings can be characterized as fundamentally unfair. *See Lockhart v. Fretwell*, —— U.S. ——, —— n. 2, ——, 113 S.Ct. 838, 843 n. 2, 844, 122 L.Ed.2d 180 (1993) (applying the "case by case prejudice inquiry that has always been built into the *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1989) ] test").[2] Two separate counsel were involved in the identifications to which Mr. Killebrew claims a reasonable attorney would have objected. For clarity, we shall consider each challenge separately.

### 1.  Identification at the preliminary hearing

Mr. Killebrew's first Sixth Amendment challenge alleges that attorney Kravat was deficient because he did not object to Tracy's identification of Mr. Killebrew at the preliminary hearing. Mr. Killebrew argues that minimal standards of competency would have required that attorney Kravat at least request less suggestive identification procedures such as a line-up or allowing Mr. Killebrew to sit in the courtroom gallery.

██ The admissibility of a challenged identification is reviewed under a two-part test: (1) defendant must establish that the identification procedure was unnecessarily suggestive and (2) if it was unnecessarily suggestive, the court applies a "totality of the circumstances" test to determine if it is reliable despite its suggestiveness. *Donaldson*, 978 F.2d at 385. Factors relevant to reliability are: opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). "[T]he primary evil to be avoided is a very substantial likelihood of irreparable misidentification." *Id.* at 198, 93 S.Ct. at 381.

██ This identification was reliable. Tracy testified that her identification was from independent recollection of the actual incident and that the shape of the robber's face and nose stood out in her memory. Tracy also testified that she had between thirty seconds and three minutes to observe the robber at a distance of approximately two feet and that the robber spoke directly to

collateral attack.  *See Williams v. Withrow*, 944 F.2d 284 (6th Cir.1991), *cert. granted,* —— U.S. ——, 112 S.Ct. 1664, 118 L.Ed.2d 386 (1992).

**2.**  *See also Harris v. Reed*, 894 F.2d 871, 877 (7th Cir.1990) (" 'The benchmark for judging a claim of ineffectiveness must be whether counsel's con-

duct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' ") (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064).

her. Finally, as a bank employee, Tracy had been trained to look for unique characteristics in such circumstances. We cannot conclude that the likelihood of misidentification was "very substantial."

Under these circumstances, attorney Kravat's tactical decision not to object to the identification did not fall below an objective reasonable standard of representation. Accordingly, the district court correctly rejected Mr. Killebrew's Sixth Amendment challenge to his representation during the preliminary hearing.

2. In-court identification

Mr. Killebrew's second Sixth Amendment challenge alleges that attorney Watson's representation was deficient because he did not object to Tracy's in-court identification of Mr. Killebrew at trial, which, Mr. Killebrew argues, was tainted by the preliminary hearing identification.

As detailed earlier, the first identification was not constitutionally infirm under the criteria of *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375. Thus, a motion to suppress Tracy's in-court identification would have been futile and attorney Watson was not incompetent for not making such a motion. However, even if, *arguendo,* we could conclude that the first identification tainted the later in-court identification, Mr. Killebrew's challenge to attorney Watson's trial representation would still fail. Attorney Watson cross-examined Tracy extensively on her failure to identify Mr. Killebrew at the photo array, her failure to notice his facial scar, mole, or goatee, and the difference in her height and weight descriptions.[3] Counsel could reasonably have concluded that attempting to destroy the credibility of the government's lead witness was the best trial

tactic. We cannot accept that such a trial tactic falls below objective standards of reasonableness. Moreover, even if, *arguendo,* we could conclude that attorney Watson's performance was not objectively reasonable, Mr. Killebrew cannot meet the prejudice prong of the *Strickland* test.

> [I]t is not enough for [a defendant] to show that the errors had some conceivable effect on the outcome of the proceeding. Rather, [he] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*United States v. Sanchez,* 984 F.2d 769, 772 (7th Cir.1993) (citations omitted); *see also Lockhart,* —— U.S. at ——, 113 S.Ct. at 844 ("the 'prejudice' component of the *Strickland* test ... focusses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair").[4] Mr. Killebrew has not met this standard. There was no dearth of incriminating evidence presented to the jury. The prosecution introduced two other identifications of Mr. Killebrew as the robber as well as the actual bank surveillance photographs. Accordingly, we cannot accept that Mr. Killebrew received constitutionally deficient counsel.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.

---

**3.** Tracy testified that the reason she failed to identify a photograph on the evening of the robbery was that she did not want to make an identification unless she was certain of her accuracy. She did tentatively narrow the display to 2 photographs, one of which was Mr. Killebrew. Tracy had between 30 seconds and 3 minutes to observe the robber at a distance within 2 feet. She had been trained to look for unique characteristics in such situations. When identifying Mr. Killebrew, Tracy noted that it was the unique shape of his nose which stood out in her memory. We do not find it unreasonable that Tracy could identify Mr. Killebrew, in person, as she

had been confronted herself, 10 days after the incident, but could not identify a two-dimensional photograph taken at an earlier date.

**4.** *See also Hollenback v. United States,* 987 F.2d 1272, 1275 (7th Cir.1993) (same); *Yohey v. Collins,* 985 F.2d 222, 228 (5th Cir.1993) (same); *Lema v. United States,* 987 F.2d 48, 51 (1st Cir. 1993) (to prevail on an ineffective assistance of counsel claim counsel's deficient performance must be "so prejudicial as to undermine confidence in the outcome of the trial, and the fundamental fairness of the result") (citations omitted).