**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph J. MURRAY, Defendant–
Appellant.**

No. 95–3308.

United States Court of Appeals,
Seventh Circuit.

Argued May 14, 1996.

Decided July 16, 1996.

Stephen A. Ingraham (argued), Office of U.S. Atty., Milwaukee, WI, for Plaintiff–Appellee.

William R. Kerner (argued), Milwaukee, WI, for Defendant–Appellant.

Before POSNER, Chief Judge, and ESCHBACH and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

A jury convicted Joseph J. Murray of being a felon in possession of a firearm. He was sentenced to a term of 63 months. On this appeal, Murray challenges two decisions made before the start of his trial, one made during the trial and one that occurred during his sentencing.

Murray challenges the district court's pretrial decisions denying his motions to suppress evidence and statements. During the trial, he claims the district court improperly admitted evidence relating to his possession of cocaine. Lastly, he calls on the carpet the district court's denial of his request for a downward departure under the federal sentencing guidelines. We affirm.

Murray attended a Super Bowl party during the early evening hours of Sunday, January 30, 1995. Several hours after the game, around midnight, two Kenosha, Wisconsin, police officers heard three blasts from a car horn and observed Murray's grey Chevrolet Cavalier stopped off the street on a lawn facing and within a few feet of a home. The home was in an area where the police said significant drug trafficking was occurring. The officers observed a male emerge from

the house wearing only undershorts, a T-shirt, and socks. The person stayed in the car a few moments and then returned to the house as the Chevy pulled away. The officers, suspecting a drug transaction, followed the car and soon noted that it did not have a rear license plate as required by Wisconsin law. Armed with a reason to stop the car, the officers signaled for the driver to stop. The car did not immediately stop, and the officers observed the driver repeatedly move downward toward the front passenger area of the auto, his head disappearing from view as the Chevy was slowing down. Once the vehicle stopped, the officers, believing the driver's actions showed him to be hiding something, quickly approached the car. One of the officers saw the driver, who turned out to be Murray, reach with his right hand toward a malt liquor can on the car's console and unsuccessfully try to cover something up with a $5 bill. Several other jerking motions with the hand moving toward the area under the front seat and toward the glove compartment were also observed. This version of events, of course, was offered by the police, and the district court, as the fact finder on the pretrial motions, was entitled to believe that this is what happened.

After not responding to three requests to display a drivers license, Murray was told to get out of the car. One of the officers then retrieved the can of malt liquor and discovered four small baggies of what appeared to be (and was later found to be) user-quantity crack cocaine in the area concealed under the $5 bill. Murray had no drivers license or other identification and became, according to the officers, verbally combative, leading one of the gendarmes to place him in the squad car. The other officer then immediately retrieved a firearm (a 9 millimeter Lorcin handgun) with one bullet in the chamber from under the front passenger seat of Murray's car. With the gun in hand, one of the officers opened the door to the squad car, showed Murray the gun, and asked him if he knew who owned it. Murray said he didn't know. Murray did, however, say that he owned the Chevy and that no one else had driven it that day. The officers then discussed the situation and Murray was arrested. It was subsequently determined that he had a prior felony conviction which led to the charge for which he was convicted in the district court.

■ Murray argues that the stop based on the failure to display license plates was a pretext because the police really thought a drug deal occurred and they wanted to stop him for that reason. This is a tired argument in this circuit, *United States v. Trigg,* 878 F.2d 1037 (7th Cir.1989), cert. denied, 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991), and, at least since a few weeks ago, in the country as well. *Whren v. United States,* ―― U.S. ――, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Ulterior motives do not invalidate a police stop for a traffic violation, no matter how minor, if a motor vehicle law infraction is detected. That is the law, and the time for debating whether it is correct—historically or conceptually—has passed.

Having observed the furtive actions we described, considering that the stop itself is immune from attack, we must conclude, as did the district court, that the seizing of the cocaine was constitutionally permissible. The gun, quickly found by the police under the front seat on the passenger side of Murray's vehicle, was also constitutionally located and seized. See *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), and *United States v. Ortiz,* 84 F.3d 977 (7th Cir.1996).

■ Murray also argued, before trial, that the jury should not hear his brief statements to the police at the scene of the stop because they were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda,* of course, requires that the familiar warnings of rights be given by police prior to custodial interrogations. For *Miranda* to apply to a traffic stop, however, a defendant must be subject to a "restraint on his freedom of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983). See *United States v. Kelly,* 991 F.2d 1308 (7th Cir.1993).

■ In *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984),

the Supreme Court grappled with the question of when, during the course of a traffic stop, *Miranda* warnings must be given to detainees. The Court declined to adopt a bright line rule that would apply *Miranda* to all traffic stops or, on the other hand, exempt traffic stops from the rule. Instead, the Court focused on the "custodial interrogation" requirement of *Miranda* as the touchstone for triggering the obligation to advise a detainee of his rights. The question in our case, then, is whether Murray was "in custody" for purposes of *Miranda* warnings when the officer, retrieved gun in hand, asked him if he owned it or gave his car to anyone that day. The district court, relying on the recommendation of Magistrate Judge Patricia Gorence, said "no" and "no" is, we think, the right answer.

There is no evidence in the record to support Murray's contention that his freedom of movement was restrained, prior to the question, in a manner *equivalent* to that associated with a formal arrest. See *Kelly*, 991 F.2d at 1312. In *Kelly*, we held that an officer's roadside questioning of a driver stopped for speeding, after finding test tubes with crystalline residue and a clamp containing marijuana residue in the car, did not become "custodial interrogation" requiring the giving of *Miranda* warnings.

Following *Berkemer*, we held in *Kelly* that the defendant was not "in constructive custody" for the purpose of requiring *Miranda* warnings. To support our conclusion, we noted that the officer in *Kelly* questioned the defendant at the roadside and that only a short period of time, twenty or thirty minutes, passed between the initial stop and the defendant's arrest. We also noted that there were no indications that the police conduct overcame the defendant's will. We also relied on *Berkemer* in rejecting the contention that an officer's unarticulated decision to arrest an individual affects the determination of whether a suspect is in custody. *Id.* at 1313 (citing *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151).

Under the precedents of *Berkemer* and *Kelly*, we conclude that Murray was not "in custody" when he was questioned, and therefore his three or four answers were not

subject to suppression. Only a brief period of time had elapsed between the initial stop and the time Murray was asked the questions. The encounter took place on a lighted street in an urban area in public view. There is no evidence that the police officers engaged in conduct which might have overborne Murray's will. Any subjective intent on the part of either officer to arrest Murray is irrelevant since neither officer informed him that he was under arrest until after he made the statements about the gun and his ownership and access to the vehicle.

Lastly, the fact that Murray was questioned while seated in the back of the squad car did not put him "in custody" for purposes of *Miranda* warnings. See *Kelly*, 991 F.2d at 1311 (where the defendant was questioned while seated in the front of the squad car). *Miranda* warnings are not required simply because questioning is conducted in a certain place, or because the person being questioned is suspected of having committed an offense. See *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). The relevant inquiry is "how a reasonable [person] in the suspect's position would have understood [the situation]." *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151. A reasonable person in Murray's position would not have considered the brief questioning at the scene to be a custodial interrogation. Once the police announced that Murray was under arrest and he was put in handcuffs, he was "in custody" for purposes of *Miranda*. His statements prior to that time were correctly found to be admissible during the trial.

During the trial, the district court rebuffed a move by Murray to keep the jury from hearing that crack cocaine was found in the car at the time the firearm was discovered. Murray challenges the decision to let the evidence in and we review the trial court's evidentiary ruling for an abuse of discretion. *United States v. Wilson*, 31 F.3d 510, 514 (7th Cir.1994).

In *United States v. Ramirez*, 45 F.3d 1096 (7th Cir.1995), we held that evidence of criminal activity not directly related to the charge against a defendant is admissible

even if it does not satisfy the requirements of Federal Rule of Evidence 404(b), if it is "intricately related to the facts of the case." The admissibility of such evidence turns on

> whether the evidence ... provide[s] the jury with a "complete story of the crime [on] trial" ... whether its absence would create a "chronological or conceptual void" in the story of the crime, ... or whether it is "so blended or connected" that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of the charged crime.

*United States v. Ramirez,* 45 F.3d at 1102. Here, the police thought a drug deal was afoot and that Murray was hiding something as he brought his car to a stop. That drugs and a gun were found, close together, gave the jury a complete story as the two were blended together under the circumstances. When the evidence of the observation of Murray's suspected drug transaction was introduced, the jury could understand why the police followed the car looking for a legal reason to stop it. When the evidence of the crack cocaine recovered from the car was introduced, the jury could better understand that Murray may indeed have made a drug purchase while the officers watched, and they could better understand why Murray might want to be armed. The evidence, in short, gave the jury a more complete story concerning the charged crime. Finally, the judge instructed the jury that the cocaine evidence was received "only on the question of [Murray's] motive to possess the firearm." For these reasons, it was not an abuse of discretion to admit the questioned evidence.

█ The final issue need not detain us long. Murray argues that he should have received a downward departure under § 5K2.11 (Lesser Harms). Essentially, he argues that Congress had a specific danger in mind when regulating firearms in the possession of felons and that if the possessor of the firearm had no intent to engage in dangerous activity, a downward departure is warranted under § 5K2.11. He relies for support on *United States v. One Star,* 9 F.3d 60 (8th Cir.1993), a case which is easily distinguishable.

█] A refusal to make a discretionary downward departure is not reviewable on appeal. *United States v. Burnett,* 66 F.3d 137 (7th Cir.1995). Reviewing the record as a whole, it seems that the district court recognized that it could in fact grant a downward departure under § 5K2.11, but that it was not warranted in this case. If that is in fact what occurred, our inquiry is ended. But the defendant argues that the district court did not know it could depart downward and thus we have jurisdiction to hear his plea.

To give the defendant the benefit of the doubt, we will assume that the district court did not directly address whether it had the discretionary authority to depart as requested. But that does not help Murray because the argument that his possession of the handgun was in a "nonaggravating" circumstance, outside the harm that the felon in possession law was designed to prevent, is dead on arrival. We reject the argument. If Murray, as a convicted felon, kept a firearm in his house on a particular day because of a direct, imminent threat of harm from an anticipated intruder, he might conceivably find comfort under § 5K2.11. His possession of a firearm in an automobile around midnight, with crack cocaine in his car, doesn't come close to the sort of mitigating situation reviewed by the Eighth Circuit in *One Star.* Accordingly, we reject the challenge to the sentence and, for the reasons stated, the judgment of the district court is affirmed.

ESCHBACH, Circuit Judge, concurring.

I write separately only because I respectfully disagree with the majority's conclusion that Murray was not "in custody" when the police questioned him at the scene.

Concluding that Murray was "verbally combative," Officer Davison placed Murray in the back of the squad car and closed the door, while Officer Shepardson searched Murray's vehicle. The record reveals that the back seat of the squad car, when the doors are closed, is analogous to a prison cell. The rear doors cannot be opened from the inside of the car, and a partition divides the front and rear seats. Not only was Murray's freedom "restrained," it was impossible for

him to escape. That, of course, is the very reason that Davison placed him in the back of the squad car in the first place. After Shepardson found drugs and a gun in Murray's car, Davison opened the car door and asked Murray: who owned the gun; who owned the car; whether Murray had loaned the car to anyone that day; and, whether anyone else had access to the car. While questioning Murray, Davison stood by the door of the car. Although it is true that Murray was not handcuffed, the use of handcuffs is not a prerequisite to a finding of custody. I also do not believe that the custodial nature of the questioning changed just because the car door was open when Davison questioned Murray. Unless Murray was prepared to tackle Davison, he was unable to leave the car. In my opinion, no reasonable person in Murray's shoes would have felt free to leave the back seat of the squad car; Murray was "in custody."

The majority cites our holding in *United States v. Kelly*, 991 F.2d 1308 (7th Cir.1993). The majority's reliance on *Kelly* in this case is misplaced. The defendant in *Kelly* was never forcibly locked in a car, he was merely detained and questioned during a roadside stop. *Id.* at 1313. Further, unlike *Kelly*, the public-safety exception to *Miranda*'s requirements is inapplicable in this case. The theory was never raised by the government. And, even if it had been, it would be unavailing because the police already had located Murray's gun when they questioned him.

Murray's responses to Davison's questions were not, however, what convicted him. The evidence found in Murray's car secured his conviction. I entirely agree with the majority that the evidence in the car was obtained legally. The admission of Murray's responses to Davison was harmless error. *Killebrew v. Endicott*, 992 F.2d 660, 663 (7th Cir.1993). Therefore, I concur.