NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 27, 2008
Decided January 28, 2009

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-1284

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>*v.*<br><br>LARRY COCHRAN,<br>*Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Indiana, Hammond Division.<br><br>No. 2:06-CR-00114<br><br>James T. Moody,<br>*Judge*. |

**O R D E R**

Larry Cochran appeals from his conviction for possessing more than five grams of cocaine base with the intent to distribute it. We conclude that the prosecutor's comment during his opening statement that Cochran was not sitting in the courtroom by his own choice did not deny Cochran a fair trial. Cochran had refused to assure the court he would not disrupt the trial, and the prosecutor's comment did not suggest that Cochran's absence evidenced his guilt. Next, the district court did not err when it denied Cochran's motion to suppress. His traffic infractions provided a valid reason to stop him and to order him

out of the car, and the baggie of crack cocaine that then fell from Cochran's pants justified the search of his vehicle. We therefore affirm Cochran's conviction.

## I. BACKGROUND

The Hammond, Indiana police received a tip on April 17, 2006 that an African-American male named "Larry" who lived at 833 Gostlin Street and drove a maroon Ford Taurus was driving around to different locations selling crack cocaine. Four days later, Officer Joseph Martinez saw an African-American male in a maroon Ford Taurus at 833 Gostlin Street. The next day, Officer Martinez saw the same person, later identified as Larry Cochran, leave in a silver Mercury Cougar that had been parked next to the Taurus. Officer Martinez followed the Cougar to a car dealership and watched. He saw Cochran, and then another male, get into a car on the dealership lot. Another officer, Officer Nicole Duncanson, also arrived and watched, and both suspected that a drug deal had taken place between Cochran and the unidentified male.

Cochran then went back into the Cougar and drove out of the dealership. Officer Duncanson followed. Shortly thereafter, she pulled Cochran over for making an improper lane change and driving without a proper registration tag. After backup officers arrived on the scene, the officers ordered Cochran out of the car. When he got out, a baggie of crack cocaine fell from his pants leg. The officers then placed Cochran under arrest, and five more baggies of crack cocaine soon fell from his pants leg. The officers searched his car, and, eventually, his trunk, finding additional crack cocaine and a digital scale. Cochran was charged with possessing with the intent to distribute more than five grams of crack cocaine.

Before the trial began, Cochran refused to assure the court he would not disrupt the trial. The judge therefore removed him from the courtroom, and Cochran observed the proceedings from his cell via live audio and video. The judge told prospective jurors during voir dire that Cochran had an absolute right not to be present in the courtroom during his trial, that Cochran's absence from the courtroom was not to be considered as evidence against him, and that his absence did not create any inference of guilt.

During the prosecutor's opening statement, the prosecutor said to the jury:

> You will hear that on April 22, 2006, Officer Joseph Martinez, who is a uniform police officer with the Hammond Police, is acting on a citizen's tip, and based on that tip, he's watching a man who turns out to be the defendant, Larry Cochran. He's watching the man drive a silver Mercury Cougar. Officer Martinez will testify that he follows that silver Mercury

Cougar based upon the tip.  He sees a man, who turns out to be Larry Cochran, <u>who is not sitting before you today, by his own choice</u>.

(Emphasis added.)  Cochran's attorney objected and asked that the comment on Cochran's absence be stricken.  The judge denied the request.  In a discussion with the attorneys before closing argument, the judge told the prosecutor not to mention Cochran's absence during the government's closing argument.  The judge also reminded the jury during its final instructions that the defendant had an absolute right to waive his right to be present in the courtroom during trial and that the defendant's absence was not evidence against him and did not create any inference of guilt.  The jury found Cochran guilty, and he appeals.

## II.  ANALYSIS

### A.      Prosecutor's Opening Statement

The first question on appeal is whether the prosecutor's comment during his opening statement that Cochran was not sitting before the jury by his own choice infringes on Cochran's Fifth or Sixth Amendment rights.  A prosecutor may not offer a defendant's failure to testify or a defendant's exercise of his Sixth Amendment rights as substantive evidence of his guilt. *United States v. Willis*, 523 F.3d 762, 773 (7th Cir. 2008); *United States v. Ochoa-Zarate*, 540 F.3d 613, 617-18 (7th Cir. 2008).  A prosecutor's comments infringe on a defendant's constitutional rights when: (1) it was the prosecutor's "manifest intention" to use the defendant's silence or exercise of his Sixth Amendment rights as evidence of guilt; or (2) the remark was of such a character that the jury would "naturally and necessarily" treat it as such. *Willis*, 523 F.3d at 773; *Ochoa-Zarate*, 540 F.3d at 618.

In this case, the prosecutor's comment that Cochran was not sitting before the jury by his own choice does not suggest a manifest intention to use the exercise of any constitutional right as evidence of Cochran's guilt, nor would a jury "naturally and necessarily" take the comment as such.  The prosecutor did not mention Cochran's silence, and the comment essentially repeated what the jury had already heard from the judge. The prosecutor also did not say "Why isn't Cochran here?" or anything that might have suggested there was something improper about Cochran's absence from the trial.  In fact, we have already declined to find error in a prosecutor's comments regarding a defendant's refusal to be present in the courtroom.  In *Resnover v. Pearson*, 965 F.2d 1453, 1465 (7th Cir. 1992), we stated:

[T]he prosecutor's comments regarding Resnover's refusal to be present in the courtroom during the penalty phase of the trial do not amount to error. Indeed, the excerpts are not comments on Resnover's refusal to testify . . . .

> The prosecutor's statements merely pointed out that the defendants were absent from the courtroom; they did not comment on either defendant's exercise of his privilege against self-incrimination.

Consistent with our decision in *Resnover*, we conclude that the remarks here did not comment on Cochran's constitutional rights. We note, though, that it did not seem necessary for the prosecutor to say during opening statement that Cochran was not sitting before the jury "by his own choice." It seems the prosecutor could have just as easily said that Officer Martinez "sees a man, who turns out to be Larry Cochran, the defendant in the case today" and left it at that. The judge had informed the jurors that Cochran would not be present in the courtroom during trial, so the jurors already knew he would not be there.

In any event, even if there was any error, it was harmless. The evidence against Cochran was overwhelming. After officers pulled over Cochran, multiple baggies of crack cocaine fell out of his pants leg. They found additional crack cocaine in the car, along with a digital scale in the trunk. And after waiving his *Miranda* rights, Cochran admitted he was transporting cocaine twice a week, and that he had nineteen kilos to deliver that night. Finally, the district court judge gave multiple reminders to the jury that it should not consider Cochran's absence as evidence against him.

### B.  Motion to Suppress

Cochran also argues that the district court should have granted his motion to suppress the crack cocaine found during the traffic stop. In doing so, he first contends that the stop of the car he was driving was unreasonable and violated the Fourth Amendment. Officer Duncanson stopped Cochran's car because, in violation of Indiana state law, Cochran made an improper lane change and did not have a proper registration tag. Cochran does not dispute that he committed the two traffic infractions, and those were legal bases to stop his car. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996) (officers can stop a vehicle when they have probable cause to believe a traffic violation has occurred). In addition, although Cochran argues that Officer Duncanson followed his car after he left the car dealership with the intent of stopping and searching it, "[u]lterior motives do not invalidate a police stop for a traffic violation, no matter how minor, if a motor vehicle law infraction is detected." *United States v. Murray*, 89 F.3d 459, 461 (7th Cir. 1996); *see also United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) ("Any ulterior motive an officer may have for making the stop is irrelevant.").

Cochran next argues that even if there was a legal basis to stop his vehicle, the officers did not have probable cause to search him and his car. Unfortunately for Cochran, this argument fails as well. First, an officer may order a driver out of a car during a valid traffic stop for officer safety reasons, and the officer need not first make any showing that

the driver posed a threat to officer safety. *See Pennsylvania v. Mimms*, 434 U.S. 106, 112 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."); *see also Maryland v. Wilson*, 519 U.S. 408, 412 (1997). The officers were therefore justified in ordering Cochran out of the car.

After Cochran got out of his car, a baggie containing what the officers thought to be (and what was later confirmed to be) crack cocaine fell out of his pants leg. That entitled the officers to seize the baggie under the plain view doctrine and gave them reason to place him under arrest for drug possession, which they did. *See United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997). Then, because Cochran was lawfully under arrest, the officers could search him and the passenger section of his vehicle as a search incident to the lawful arrest. *See, e.g., Ochana v. Flores*, 347 F.3d 266, 271 (7th Cir. 2003). And when they found drugs in the console, they were entitled to search the rest of the car, including the trunk. *United States v. Thornton*, 197 F.3d 241, 248-49 (7th Cir. 1999). The stop and subsequent searches were all lawful under the Fourth Amendment, and the district court properly denied Cochran's motion to suppress.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.