**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Josiah COMPTON, III, also known
as "Little Joe," Defendant–
Appellant.**

**No. 95–1945.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1995.

Decided April 29, 1996.

Suzanne M. Wissmann (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Phillip J. Kavanaugh (argued), Office of the Federal Public Defender, East St. Louis, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, COFFEY and SKINNER,* Circuit Judges.

* Hon. Walter Jay Skinner, District of Massachu-setts, sitting by designation.

COFFEY, Circuit Judge.

Josiah ("Little Joe") Compton pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and was convicted by a jury of distributing cocaine base (or "crack"), in violation of 21 U.S.C. § 841(a)(1). The district judge imposed concurrent sentences of 60 months imprisonment and three years supervised release, plus a fine of $500 and a special assessment of $100. Compton appeals his sentence, arguing that the district court engaged in impermissible "double counting" when it calculated his criminal history pursuant to § 4A1.1 of the Sentencing Guidelines. We hold that the sentencing judge's calculation of the defendant's criminal history was proper. Sentence affirmed.

## I. BACKGROUND

### A. Compton's Illinois Drug Conviction & Sentence

On August 13, 1992, an Illinois state court sentenced Compton to five years in prison after he entered a plea of guilty to possession of cocaine.[1] Compton was incarcerated at the Menard Correctional Center, a state prison in Menard, Illinois, for approximately ten months. Thereafter, he was released by the Illinois Department of Corrections in order to serve the remainder of his sentence under electronic home detention. 730 ILCS 5/5–8–A. In late June of 1993, before entering the home detention program, Compton signed a written agreement in which (among other things) he pledged to wear an electronic-monitoring bracelet, obey all federal and state laws and local ordinances, and refrain from the possession of firearms or illicit drugs for the duration of his home confinement. Compton was to serve his period of home detention at his sister's apartment in Venice, Illinois and, if he complied with the terms of the agreement, he was scheduled to be discharged from the electronic monitoring program on July 22, 1994.

After Compton's home detention had commenced, the Department of Corrections received information that the defendant was selling drugs from his sister's apartment, in violation of the terms of his agreement. The Department of Corrections contacted the Venice Police Department, which arranged for a confidential informant ("CI") to make a controlled purchase of crack cocaine from the defendant on February 1, 1994. On March 3, Venice police and two agents from the Department of Corrections went to the apartment where Compton was living to take him into custody for the February 1 cocaine sale, which had been a clear violation of Compton's home detention agreement.[2] On this date, a search of the apartment revealed 45.8 grams of a white powdery substance resembling cocaine,[3] a .45 caliber semi-automatic pistol, and a safe containing $5,117.87 in cash. As discussed briefly below, this search—although conducted without a warrant—was authorized by the terms of the written home detention agreement between Compton and the Department of Corrections, which permitted corrections officials to search Compton's "host site" "at any time" and "for any reason."

### B. Federal Prosecution of Compton

Following his arrest, Compton was turned over to federal authorities for prosecution and on July 21, 1994, a grand jury returned a four-count indictment against him. Count I of the indictment charged Compton with distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (the sale of crack to the CI on February 1, 1994). Counts II and III of the indictment stemmed from the powder "cocaine" discovered at the apartment on March 3 and were eventually dismissed at the Government's urging when testing of the powder (conducted after Compton's trial) re-

---

1. Compton was four days short of his twenty-third birthday at the time of sentencing. He already had two prior felony drug-possession convictions in the State of Illinois.

2. The record does not disclose why the Department of Corrections failed to learn of the February 1, 1994 drug transaction until March 2, 1994.

3. As discussed below, a quantitative analysis of this material ultimately revealed that it was less than 1 percent pure, leading to the dismissal of two of the federal charges brought against Compton.

vealed that it was less than 1 percent pure.[4] Count IV charged the defendant with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Compton filed a motion to suppress the evidence seized at the "host site," challenging the search on Fourth Amendment grounds because it was conducted without a warrant and without Compton's consent. The district court, on September 19, rejected Compton's Fourth Amendment arguments, observing that: (1) the terms of the home detention agreement explicitly authorized searches "at any time" and "for any reason," and (2) even without this authorization, Compton did not enjoy the same Fourth Amendment protection as an ordinary citizen because he was essentially an "inmate" of the corrections system at the time of the search. Compton has not appealed the district court's denial of his suppression motion.

Compton pleaded guilty to Count IV of the indictment (possession of a firearm by a convicted felon) on September 20, 1994, the same day his jury trial commenced. On September 22, the jury convicted him of the remaining three counts. Following the jury's findings, but before sentencing, Counts II and III of the indictment were dismissed on the motion of the United States Attorney because post-trial laboratory testing demonstrated that the cocaine seized in Compton's apartment was less than 1 percent pure.[5] Thus, for sentencing purposes, only Count I (distribution of crack cocaine) and Count IV (possession of a firearm by a convicted felon) were before the district court.

### C. *Sentencing*

The probation department prepared a Presentence Investigation Report ("PSR") and a revised PSR, and Compton filed no written objections. Compton was assigned a total offense level of 18 and ten criminal history points pursuant to § 4A1.1.[6] His criminal history total included two points under subsection (d) because "the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). The PSR also included an additional point pursuant to subsection (e), which provides:

> (e) *Add 2 points if the defendant committed the instant offense less than two years after release from imprisonment on a sentence counted under(a) or (b) or while in imprisonment or escape status on such a sentence. If 2 points are added for item (d), add only 1 point for this item.*

U.S.S.G. § 4A1.1(e) (emphasis added).

At the sentencing hearing on April 7, 1995, Compton argued that the assignment of two criminal history points under § 4A1.1(d) *plus* another point under the "while in imprisonment" language of § 4A1.1(e) amounted to impermissible double counting. The district court acknowledged that § 4A1.1 "could be more felicitously worded or more properly punctuated," but found that the Guidelines clearly contemplated a total of three criminal history points for a defendant who committed a crime while "imprisoned." The sentencing judge apparently assumed that electronic home detention was "imprisonment" for purposes of applying § 4A1.1[7] and thus relied upon the "while in imprisonment" language of subsection (e) *instead of* the first clause of that subsection, which calls for an enhancement when the defendant has committed the offense within two years of release from prison.

---

**4.** The cocaine powder discovered at the defendant's residence on March 3 was misplaced by the Venice Police Department and therefore unavailable for laboratory analysis until after Compton's trial. When testing revealed that the cocaine was less than 1 percent pure, the Government filed a motion to dismiss Counts II and III.

**5.** See note 4 supra.

**6.** The probation department and the sentencing court relied upon the 1994 Guidelines Manual in calculating Compton's sentence.

**7.** This assumption, shared by the parties and the judge alike, was logical enough because (as discussed above) the district court had previously characterized Compton as an "inmate" of the Department of Corrections for purposes of analyzing his motion to suppress.

The practical significance of the extra point assigned to Compton pursuant to § 4A1.1(e) is that under the Guidelines it served to move him into a higher criminal history category. Without the disputed point, Compton would have had but nine points and been classified in Category IV, for which the Guidelines authorize a term of imprisonment of 41 to 51 months. Adding one point under subsection (e) gave Compton a total of ten criminal history points, which placed him in Category V and allowed the judge to impose a sentence of anywhere between 51 to 63 months. The actual sentence, as noted above, was towards the high end of this range (60 months on each of the counts, to be served concurrently).

## II. ISSUE

The facts in this case are undisputed and the sole legal issue presented is whether the district court engaged in impermissible "double counting" when it assigned Compton two criminal history points pursuant to § 4A1.1(d) of the Sentencing Guidelines and an additional point under § 4A1.1(e). Whether a sentencing court has incorrectly applied the Guidelines by "double counting" is a question of law that we review *de novo*. *United States v. Haines,* 32 F.3d 290, 293 (7th Cir.1994).

## III. DISCUSSION

Like many of the sentencing appeals decided by this court, this one involves a dispute over numbers; specifically, the number of criminal history points the district court could properly assign to the defendant under § 4A1.1 of the Guidelines. Compton does not challenge the two points assigned to him under 4A1.1(d) for committing an offense "while under any criminal justice sentence, including ... imprisonment," [8] but he does take issue with the additional point he received under 4A1.1(e) for committing a crime "while in imprisonment." According to Compton, subsection (e) punishes him a sec-

ond time for the same conduct and thus amounts to impermissible double counting. This court defines double counting as the imposition of "two or more upward adjustments ... when both are premised on the same conduct." *Haines,* 32 F.3d at 293.

When briefing this case, the parties assumed that electronic home detention was "imprisonment" and addressed themselves to the question of whether committing an offense while thus "imprisoned" could be held against Compton twice: once under 4A1.1(d) and again under 4A1.1(e). The parties' assumptions about Compton's "imprisoned" status were logical for a number of reasons. First and foremost, as noted above, the district court relied upon the "while in imprisonment" language of 4A1.1(e) when it awarded Compton an additional criminal history point (the court did not invoke the part of subsection (e) that calls for an additional point when a defendant has committed an offense "less than two years after release from imprisonment"). Electronic home detention, with its significant restraints on freedom of movement, is arguably a form of "imprisonment" as that term is commonly defined.[9] Case law from Illinois, for example, suggests (although it does not explicitly hold) that electronic home detention is a type of "imprisonment." *See, e.g., People v. Moss,* 274 Ill.App.3d 77, 210 Ill.Dec. 949, 952, 654 N.E.2d 248, 251 (1995) ("the term 'penal institution' is ... broad enough to encompass the electronic home detention program"); *People v. Ramos,* 181 Ill.App.3d 1062, 130 Ill.Dec. 792, 794, 537 N.E.2d 1121, 1123 (1989) (electronic home monitoring constitutes "custody" for purposes of calculating a sentence credit).

Notwithstanding the parties' (and the district court's) mistaken assumptions concerning the scope of "imprisonment" under federal law, this circuit has recently clarified and determined that electronic home detention is not a form of "imprisonment" for purposes of the Federal Sentencing Guide-

---

**8.** "[A] 'criminal justice sentence' [for purposes of subsection (d)] means a sentence ... having a custodial or supervisory component, although active supervision is not required for this item to apply." U.S.S.G. § 4A1.1, comment. (n.4).

**9.** To "imprison" is defined as "to put in or as if in prison; [to] confine." American Heritage Dictionary 647 (2d College Edition 1982) (emphasis added).

lines. In *United States v. Phipps*,[10] decided by this court last October, we held that the meaning of "imprisonment" is a question of federal law and that "imprisonment," at least in the context of the Guidelines, denotes time actually spent in a penal institution. 68 F.3d 159, 162 (7th Cir.1995). Specifically, the court noted that " 'home detention' differs from 'imprisonment' throughout the Guidelines schema. It is not 'imprisonment' but a 'substitute for imprisonment.' " *Id.* (citations omitted).

In light of *Phipps*, as noted by the Government at oral argument in this case, much of the parties' analysis of the "double counting" issue becomes irrelevant. If Compton was *not* "imprisoned" during the period of his electronic home detention, as we hold, then the allocation of an extra criminal history point based on the "while in imprisonment" language of § 4A1.1(e) was improper (quite apart from any arguments concerning double counting). Indeed, if subsection (e) only contained the phrase "while in imprisonment," our analysis would be concluded; because of the holding in *Phipps*, we would be obliged to remand this case for re-sentencing. 18 U.S.C. § 3742.

■ There is, however, an alternative basis for affirming the additional criminal history point awarded to Compton by the sentencing judge. Subsection (e) contains language authorizing an additional point when, as in Compton's case, a defendant has committed a crime within a period of "two years after release from imprisonment."

U.S.S.G. § 4A1.1(e). The record shows that Compton was released from prison in late June or possibly early July of 1993,[11] less than one year before committing the instant offenses in February and March of 1994. The district judge did not refer to the fact that Compton qualified for an additional criminal history point on this basis, but "whether or not the district court ultimately relied upon this ground is inconsequential, as we may affirm on any basis that finds support in the record." *United States v. Ross*, 9 F.3d 1182, 1195 (7th Cir.1993) (Rovner, J., concurring) (citing *United States v. Thomas*, 934 F.2d 840, 843 (7th Cir.1991)). "In the review of judicial proceedings, the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937). We hold that the ultimate calculation of Compton's sentence was correct, even though intervening case law (*Phipps*) has called into question the district judge's reasoning (i.e., his reliance on the "while in imprisonment" language).

■ To summarize: (1) Compton deserved two criminal history points under § 4A1.1(d) for committing an offense "while under any criminal justice sentence" (i.e., electronic home detention), and (2) he merited an additional point under § 4A1.1(e) for committing an offense "less than two years after release from imprisonment."[12] The enhancements in subsections (d) and (e), as applied here,

---

**10.** The Government called our attention to this case by way of supplemental authority, pursuant to Circuit Rule 28(j).

**11.** On August 13, 1992, Compton was sentenced to five years imprisonment on the Illinois drug charge. According to his PSR, he was "received at Menard on August 20, 1992." Compton signed the "Electronic Detention Program Agreement" on June 28, 1993. He was released from prison to commence his period of electronic home detention sometime in late June or early July of 1993. Therefore, the record establishes that Compton committed the federal crimes that gave rise to this appeal well within two years of his release from confinement.

**12.** The Government briefly outlined the foregoing analysis during oral argument before this court, and counsel for the defendant did little to rebut the Government's argument except to state that he "took issue" with the prosecution's change of position regarding Compton's status. Counsel admitted that he was "not sure" what difference Compton's status made, or how it helped or hurt his case, but he did object to the Government "changing the rules at the last minute." Counsel did not respond when the Court observed "Well, there's a new case [*Phipps* was decided October 6, 1995, one month in advance of oral argument]; [a] new case changes the rules, so they're bringing our attention to it." Thus, while both parties had an adequate opportunity to address the ramifications of our holding in Phipps, the defendant simply failed to do so. Nor did defense counsel request of the court an opportunity to file supplemental materials and/or case law.

are premised on different conduct: the former punishes a defendant for committing a crime during the pendency of a criminal justice sentence, while the latter targets the criminal who commits other criminal acts shortly after release from incarceration (i.e., within two years).[13] The application of both of these subsections—as set forth here-does not amount to double counting, which occurs "when identical conduct is described in two different ways so that two different adjustments apply." *Haines*, 32 F.3d at 293.

## IV. CONCLUSION

After *Phipps*, it is clear (for purposes of the Guidelines) that the term "imprisonment" does not encompass electronic home detention. Consequently, the additional criminal history point allocated to Compton may not rest on the "while in imprisonment" language of § 4A1.1(e). The additional point was nevertheless proper under that subsection because Compton committed his offense within two years of release from imprisonment. The sentence of Josiah Compton is AFFIRMED.

---

13. As explained in the Guidelines commentary, "repeated criminal behavior ... aggravate[s] the need for punishment with each recurrence" because a recidivist is both more of a threat to society and less likely to be successfully rehabilitated. U.S.S.G. Ch. 4, Pt. A, intro. comment.