**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mark A. WILLIAMS, Defendant–Appellant.**

No. 96–2407.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1997.

Decided Feb. 13, 1997.

Colin S. Bruce, argued, Office of the United States Attorney, Urbana, IL, for Plaintiff–Appellee.

Thomas J. Cunningham, argued, Smith, Lodge & Schneider, Chicago, IL, for Defendant–Appellant.

Before FLAUM, EASTERBROOK, and EVANS, Circuit Judges.

FLAUM, Circuit Judge.

Mark A. Williams, convicted of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) and now serving a sixty-three month sentence, appeals both his conviction and sentence. On appeal, Williams argues that certain evidence should have been suppressed and testimony excluded. He also maintains that he received the ineffective assistance of counsel, and, further, that the district court misapplied the federal sentencing guidelines. For the reasons expressed below, we find no merit in this appeal and affirm both sentence and conviction.

## I.

Mark Williams and his brother Charles, members of a family known to the Champaign, Illinois police, were parked in front of a Colonial Pantry at 1:30 a.m. when happened upon by a police car. The brothers, with Mark at the wheel, drove away; the police followed at a distance of about 200 feet. Several blocks and turns later, the police pulled the Williamses over. Their reason was twofold: (1) Mark Williams had signaled a left-hand turn about 30 feet from the intersection; the Illinois Motor Vehicle Code requires a signal at 100 feet, 625 ILCS 5/11–804(b); (2) before stopping at a stop sign, Mark Williams had pulled forward into the intersection, past where any stop-line or cross-walk would have been marked, had there been one; the Illinois Motor Vehicle code requires that a car stop "at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection," 625 ILCS 5/11–904(b).

Appellant handed his license and insurance information to Officer Matarelli, who was on the scene with his partner Hanson. Officers Dove and Went arrived as backup. While Matarelli checked the registration, Dove observed a partially smoked marijuana cigarette on the driver's side window ledge of the Williams' car, partially on the rubber gasket, partially on the chrome trim. Matarelli pocketed the "roach," informed Mark Williams that he was under arrest for possession of marijuana, and ordered him out of the car. Mark Williams resisted. Officer Kelly, Lieutenant Spires, the shift supervisor, and the canine unit next arrived. The police attempted to use pepper spray on the Williamses; they rolled up the windows. Spires then ordered that a rear car window be broken, so that the front door could be unlocked. Appellant was removed from the car and handcuffed. The police searched the car and found two loaded guns, one under

the middle arm rest and the other in the glove compartment.

Mark Williams, already convicted of a felony aggravated battery offense in Champaign County, Illinois, was indicted for possession of a firearm by a convicted felon. He moved to quash the traffic stop and his arrest, to exclude certain evidence irrelevant to the charge, and to suppress the evidence recovered during the search. The district court granted the motion to exclude and disallowed evidence related to Williams's possession of marijuana and resistance to arrest, but denied the motion to suppress and found that the two guns were recovered from a valid search. The jury convicted.

## II.

■ Williams argues that the traffic stop was pretextual, and that the evidence recovered pursuant to the stop should therefore be suppressed. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *Whren v. United States*, —— U.S. ——, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). Because the temporary stop of an automobile is considered a seizure of "persons," it must not be "unreasonable." *Id.* In evaluating the reasonableness of a stop, we rely upon the concept of probable cause, recently and broadly defined by the Supreme Court as "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, —— U.S. ——, ——, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996); *see also Beck v. Ohio*, 379 U.S. 89, 90, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In the context of a stop in response to the commission of a traffic offense, as in the instant case, the police need only have probable cause, in other words, circumstances sufficient to warrant a man or woman of prudence to believe, that a moving violation has occurred. *Whren*, —— U.S. at ——, 116 S.Ct. at 1772.

■ By arguing that the stop was pretextual, Williams seeks to exploit a wrinkle in our probable cause jurisprudence. The law,

however, is clear. Courts have essentially equated the pretextual with the unreasonable, so that if an arrest or traffic stop is used as a pretext to search for evidence, the search constitutes a violation of the Fourth Amendment. *United States v. Lefkowitz*, 285 U.S. 452, 467, 52 S.Ct. 420, 424, 76 L.Ed. 877 (1932); *United States v. Willis*, 61 F.3d 526, 530 (7th Cir.1995); *United States v. Trigg*, 878 F.2d 1037, 1039 (7th Cir.1989). Despite our suggestively subjective terminology, we use an objective test to discern whether a search is unreasonable. *Whren*, —— U.S. at ——, 116 S.Ct. at 1774. Therefore, only pretext that can be objectively exposed, *i.e.* where no proffered circumstance could cause a prudent person to suspect a crime or moving violation to have occurred, results in the suppression of evidence. Accordingly, the ulterior motives of an officer, where an objective justification exists, do not invalidate a search. *Id.*

We underscored last year that the argument that ulterior motives invalidate a police stop for a traffic violation is a "tired argument in this circuit, ... and this country." *United States v. Murray*, 89 F.3d 459, 461 (7th Cir.1996) (citing *United States v. Trigg*, 878 F.2d 1037 (7th Cir.1989) and *Whren*, —— U.S. at ——, 116 S.Ct at 1774, respectively). The repetition of this argument may be due, in part, to the judicial adherence to the term "pretextual" in the face of a Supreme Court sanctioned test that has abandoned the every-day use of the term. Post *Whren*, pretext is devoid of its traditional sense; what remains is to look for the absence of an objective rationale for a search. And lest counsel be tempted to quibble with the reasonableness of an objective rationale in the context of a moving violation, we also point out that our objective analysis is indifferent to the relatively minor nature of the traffic offense. *See Murray* 89 F.3d at 461 (probable cause exists where automobile missing rear license plate in violation of Wisconsin law); *United States v. Smith*, 80 F.3d 215 (7th Cir.1996) (probable cause formed where air freshener hanging from rear view mirror, or where cracked windshield and automobile crossing fog lines, or where improper use of

turn signal and automobile straddling lanes, all in violation of Illinois law).

That much said, we now turn an objective eye to the circumstances of the automobile stop. We review a determination of probable cause de novo, *Ornelas,* —— U.S. at ——, 116 S.Ct. at 1662. We do not begin our review with a clean slate as we examine the underlying factual determinations only for clear error and weight "the inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at ——, 116 S.Ct. at 1663. Here, the district court found that Williams violated two provisions of the Illinois Motor Vehicle Code. Urging us to find these determinations clearly erroneous, Williams maintains that no reasonable officer could have pulled him over because the distances relied upon by the arresting officer were impossible to gauge from 200 feet behind his car, an argument rejected by the district court. Without any evidence to the contrary, we cannot find these factual determinations by the district court clearly erroneous. These findings in hand, we have more than what is necessary for probable cause. Because suspicion of a traffic offense constitutes probable cause, *see Whren,* —— U.S. at ——, 116 S.Ct. at 1772, the district court's factual findings that moving violations indeed occurred compel us to find probable cause. Accordingly, the stop was not pretextual, as that term is now legally construed, and the evidence seized in the resulting search was properly admitted.

### III.

Williams complains that the testimony of three officers that he placed his hand on his right thigh throughout the arrest, when there was a loaded gun next to his thigh under the armrest, was more prejudicial than probative, and therefore should have been excluded under Federal Rule of Evidence 403.[1] Deferential to the district court in instances of evidentiary rulings, we review for an abuse of discretion. *United*

*States v. Marshall,* 75 F.3d 1097, 1109 (7th Cir.1996); *United States v. Butler,* 71 F.3d 243, 250 (7th Cir.1995).

Williams argues that the testimony of the three officers was prejudicial for two reasons: (1) it showed that four officers were necessary to arrest Williams, circumventing a pretrial ruling barring introduction of evidence relating to Williams's resistance to arrest; and (2) it created the impression that Williams was contemplating using the gun on the police. The government responds that the location of Williams' right hand was probative and relevant because it tended to show that Williams constructively possessed the gun. The government further explains that the testimony of the two additional police officers was not lengthy and showed that Williams' hand was on his thigh throughout the whole traffic stop.

We are somewhat at a loss to discern the import of this testimony, either for the prosecution or against the defense. Williams was sitting next to a gun which was hidden under his armrest: the exact whereabouts of his right hand could not have been too probative or too damning. In any event, one of the elements of the crime charged is that the defendant knowingly possessed the firearm, *United States v. Lloyd,* 71 F.3d 1256, 1266 (7th Cir.1995) (citation omitted). The prosecution introduced the testimony concerning the placement of the right hand to show that Williams possessed the gun throughout the arrest. Perhaps the exact placement of his hand helped to distinguish Williams as possessor from his brother. Regardless, the prejudice, if any, was not great: the presence of four policemen does not lead to an inference that defendant resisted arrest; the fact that appellant's hand was on his thigh does no more suggest that he was contemplating using the gun than testimony that his hand was at his side or on the armrest would have. We cannot say the admission of such evidence, while mildly probative, is an abuse of discretion.

---

1. Federal Rule of Evidence 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consider-

ations of undue delay, waste of time, or needless presentation of cumulative evidence." *See United States v. Williams,* 81 F.3d 1434, 1443 (7th Cir.1996); *United States v. Smith,* 80 F.3d 1188, 1192 (7th Cir.1996).

## IV.

Williams next protests that he received the ineffective assistance of counsel in three instances. To show a violation of the Sixth Amendment right to counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant must establish that his attorney's performance fell below an objective standard of reasonableness, *id.* at 688, 104 S.Ct. at 2064–65, and that the counsel's deficiencies prejudiced the outcome of the proceedings, *id.* at 691, 104 S.Ct. at 2066; *see Holman v. Page*, 95 F.3d 481, 490 (7th Cir.1996). The *Strickland* test is "highly deferential" to counsel, presuming reasonable judgment and declining to second guess strategic choices. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *United States v. Balzano*, 916 F.2d 1273, 1294 (7th Cir.1990).

Recently, we explained that ineffectiveness claims based on counsel's performance at an argument for the suppression of evidence cannot be successful because the damage done by an inept attorney in this context does not constitute prejudice as defined under *Strickland*.[2] *Holman*, 95 F.3d at 490–92. Accordingly, Williams's first two ineffectiveness complaints, that his trial counsel failed to argue at the suppression hearing that the arresting officer's testimony regarding the marijuana cigarette was "incredible" and that his trial counsel failed to request production of the marijuana cigarette,[3] can be readily dismissed as futile under *Holman*.

Williams's third contention is that his trial counsel was deficient in failing to call three witnesses. Williams explains that both his mother and sister-in-law were prepared to testify that they owned the guns found in the car. Williams also desired that somebody, presumably a forensic specialist, testify that his brother Charles's finger prints, rather than his own, were on the gun. Counsel's failure to call these witnesses does not rise to the level of a Sixth Amendment violation. A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review. "The Constitution does not oblige counsel to present each and every witness that is suggested to him." *Balzano*, 916 F.2d at 1294. Further, since the government's proof consisted of demonstrating that Williams was a felon, that he constructively possessed a gun by sitting next to one in a car, and that the gun passed through interstate commerce, *see Lloyd*, 71 F.3d at 1266, the expected testimony of these witnesses would not have been critical to Williams's defense.

## V.

Finally, Williams challenges the court's application of the United States Sentencing Guidelines to his sentence. Williams claims the court "double counted" by adding two points pursuant to Federal Sentencing Guideline Section 4A1.1(d) because it had already added a point pursuant to guideline sections 4A1.1(c) and 4A1.2(c)(1). We review Williams' claim *de novo*. *United States v. Compton*, 82 F.3d 179, 183 (7th Cir.1996); *United States v. Haines*, 32 F.3d 290, 293 (7th Cir.1994). Double counting occurs when the court applies two or more upward adjustments that are premised on the same conduct. *Compton*, 82 F.3d at 183; *Haines*, 32 F.3d at 293. Williams had been convicted of resisting arrest, and, at the time of the gun possession charge, was still serving his probation for this earlier offense. At sentencing, Williams received one additional point for his criminal history and two additional points for committing the crime while on probation. Williams argues both upward adjustments stem from the same conduct: his earlier conviction. We see it another way: the first adjustment results from the earlier conviction, the second from his current conduct. *Cf. Compton*, 82 F.3d at 184–85 ( discussing dual enhancements for single crime committed while serving term of electronic home detention: "these enhancements ... are premised on different conduct: the for-

2. We do allow that ineffectiveness at a suppression hearing could be used to show counsel's overall incompetence. *Holman*, 95 F.3d at 492.

3. We assume that Williams imagines this request for production was to be made at the suppression hearing, as the evidence regarding the cigarette was inadmissable at trial.

mer punishes a defendant for committing a crime during the pendency of a criminal justice sentence, while the latter targets the criminal who commits criminal acts shortly after the release of incarceration.").

For the reasons stated above, we AFFIRM the decision of the district court.