UNITED STATES of America,
Plaintiff–Appellee,

v.

Christopher JONES, Defendant–
Appellant.

No. 97–3689.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1998.

Decided Aug. 10, 1998.

Stephen A. Ingraham (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

John W. Hardin, III (argued), River Forest, IL, for Defendant–Appellant.

Before FLAUM, RIPPLE, and KANNE, Circuit Judges.

FLAUM, Circuit Judge.

Christopher Jones, a Wisconsin parolee, was taken into custody by police for violating his parole. A subsequent warrantless search of Jones's residence uncovered 86 grams of crack cocaine. A jury convicted Jones of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), and the district court sentenced Jones to 360 months imprisonment. On appeal, Jones raises a number of challenges relating to the district court's denial of his motion to suppress the cocaine discovered during the search of his home, including an argument that the holding of *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), does not apply to warrantless searches that are conducted while the defendant is in police custody. We reject these arguments and affirm Jones's conviction and sentence.

## I.

Christopher Jones was paroled to the Wisconsin Department of Corrections (DOC) in November 1995 after serving time for an earlier conviction on cocaine possession charges. As a parolee, Jones was subject to certain conditions elaborated in the Wisconsin Administrative Code. *See* WIS. ADMIN. CODE § DOC 328. One of those conditions prohibits parolees from possessing "contraband," *see* §§ DOC 328.21(3), 328.16(1), which in Jones's case included both firearms and controlled substances. Another condition required Jones to report his address to his parole supervisor, Bridget Downey. *See* § DOC 328.04(3). Jones provided Downey with the address of the Milwaukee apartment he shared with his fiance and their three children, and Downey visited the residence in December 1995. Subsequent attempts by Downey to visit Jones's residence proved unavailing because no one answered the door at the apartment. *See* § DOC 328.04(3)(k) (requiring a parolee to consent to a home search).

Milwaukee Police Officer Peter Pierce contacted Downey in February 1996 and informed her that Jones was suspected of selling drugs from a car. Downey did not take any action at this time, and the location of the vehicle was not known. Subsequently, on Friday April 12, 1996, Officer Pierce informed Downey that Jones's ex-girlfriend, LaDonna Hart, had filed a report claiming that Jones had threatened her with a gun. Pierce faxed the police report to Downey and, based on the report, Downey received approval from her DOC supervisor to issue an apprehension warrant for Jones's arrest for violating the terms of his parole. Pierce did not learn of the arrest warrant until the following Monday afternoon when he spoke with Downey, who told Pierce to arrest Jones on sight.

Later that Monday afternoon Pierce saw Jones, along with his fiancée Phyllis Reed, leave their apartment and drive off in a car.

Pierce followed in his own car and stopped Jones after a short distance. He arrested Jones immediately for violating the terms of his parole and also for driving without a valid driver's license. Pierce also searched the vehicle, and he discovered a small amount of crack cocaine wedged between the front passenger seat and the front passenger door. Due to the cocaine's location, Pierce arrested only Reed, who had been sitting in the front passenger seat, for possession of the cocaine.

At this point, Pierce telephoned Downey and told her of the circumstances of Jones's arrest, that he had found cocaine in the car, and that no gun was found in the car. Downey then talked to her DOC supervisor about the possibility of a search of Jones's residence, pursuant to § DOC 328.21(3).[1] She told her supervisor that Jones was on parole for a cocaine possession conviction and that cocaine was found in a car that he had been driving. In addition, Downey told her supervisor of the police report that Jones's ex-girlfriend had recently filed and that a gun was not found in the car when Jones was arrested. Downey's supervisor in turn relayed this information to his regional supervisor, John Barian, who approved the search of Jones's home.

Downey then contacted Officer Pierce and informed him that she would be conducting a search of Jones's residence. Pursuant to DOC procedure, Downey requested that Pierce meet the DOC officers at the residence in order to provide them with protection. She also asked Pierce to bring with him Jones's keys so that she could gain entry to the residence. Pierce and another officer met Downey and her supervisor at Jones's residence, and he brought along two sets of keys that he had obtained from the car that Jones was driving when he was arrested. The officers used the keys to gain entry to the residence, which was unoccupied at the time. After the police officers secured the apartment, Downey and her supervisor proceeded to search it while the police officers stood by. During the course of the search, the DOC officers discovered approximately 86 grams of crack cocaine hidden in a child's stool that was located in what appeared to be the adults' bedroom. The record does not reflect whether a gun was found in the apartment.

The grand jury indicted Jones for possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). Jones filed a motion to suppress the evidence found at his residence. The motion argued that the DOC did not have "reasonable grounds," as defined in the Wisconsin Administrative Code, to conduct a warrantless search. In the alternative, the motion argued, the DOC officers conducted the search as agents of the police officers, rather than in furtherance of their correctional function, and they therefore were required to obtain a warrant supported by probable cause to conduct the search. After conducting a hearing, a magistrate judge recommended that the district court deny Jones's motion to suppress, and the district court adopted this recommendation. Jones's first trial ended in a mistrial, however, and the case was reassigned to Judge Thomas Curran and Jones was appointed new defense counsel. Jones renewed

---

1. The Wisconsin Administrative Code permits searches of a parolee's residence "if there are reasonable grounds to believe that the quarters ... contain contraband. Approval of the supervisor shall be obtained unless exigent circumstances ... require search without approval." § DOC 328.21(3)(a). The Code further defines "reasonable grounds":

> In deciding whether there are reasonable grounds to believe ... that a client possesses contraband or that a client's living quarters or property contain contraband, a staff member shall consider any of the following:
>   (a) The observations of staff members.
>   (b) Information provided by informants.
>   (c) The reliability of the information provided by an informant....

>   (d) The reliability of the informant....
>   (e) The activity of the client that relates to whether the client might possess contraband....
>   (f) Information provided by the client that is relevant to whether the client ... possesses any other contraband.
>   (g) The experience of a staff member with that client or in a similar experience.
>   (h) Prior seizures of contraband from the client.
>   (i) The need to verify compliance with rules of supervision and state and federal law.
> *Id.* § DOC 328.21(7).

his motion to suppress before Judge Curran, and the motion was again rejected. The second trial resulted in a guilty verdict, and the district court sentenced Jones to 360 months imprisonment.

## II.

■ On appeal, Jones raises three arguments relating to his motions to suppress that differ from the arguments raised in the district court. First, he asserts that a warrantless search of a parolee's residence based on "reasonable grounds" (as defined in the Wisconsin Administrative Code) violates the Fourth Amendment when the parolee is in police custody at the time of the search. His second and third arguments both relate to the procedural requirements of the Wisconsin Administrative Code. He argues that Downey was not aware of the requirements to satisfy Wisconsin's "reasonable grounds" regulation, such that she in fact could not have had reasonable grounds to conduct the search. Also, he argues that the DOC officers' use of his keys to gain entry to his residence constituted a forced entry in violation of the Administrative Code, which he asserts compels suppression of the evidence discovered during the search. Finally, Jones asserts that he received ineffective assistance from his trial lawyers with respect to the motions to suppress.[2] We consider these arguments in turn.

### A. Warrantless Searches of a Parolee's Residence

In *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), the Supreme Court addressed the constitutionality of a warrantless search of a Wisconsin probationer's home[3] pursuant to § DOC 328.21. In that case, DOC officials had conducted a warrantless search of Griffin's home upon receiving information from a police officer that there "were or might be guns in Griffin's apartment." *Id.* at 871, 107 S.Ct. 3164. Rather than determine whether the search itself was constitutional, the Court held that "[t]he search of Griffin's home satisfied the demands of the Fourth Amendment because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles." *Id.* at 873, 107 S.Ct. 3164. The Court recognized that the Fourth .Amendment's requirement that searches be "reasonable" did not require that all searches be undertaken pursuant to a warrant, which under the Fourth Amendment must be supported by probable cause. *See id.* Rather, the Court noted that it had permitted exceptions to the requirement of a warrant supported by probable cause "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Id.* (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring)).

The Court in *Griffin* then proceeded to consider whether a State's administration of its probation system presents "special needs" beyond the requirements of normal law enforcement to justify a departure from the requirements of a warrant and probable

2. While Jones argues that he received ineffective assistance because his trial lawyers failed to raise the arguments in favor of suppression that he now raises on appeal, the Government has not argued that Jones forfeited these arguments, in which case we would review the district court's decision only for plain error. *See* FED R.CRIM.P. 52(b). Because the Government has forfeited its forfeiture argument, we shall review Jones's claims according to the standards of review that would have applied if Jones had raised these arguments in the district court. *See United States v. Newman*, 144 F.3d 531, 542 n. 11 (7th Cir.1998).

3. The Wisconsin Administrative Code chapter relating to "Adult Field Supervision" applies to both probationers and parolees. *See* WIS. ADMIN.

CODE § DOC 328.02. The petitioner in *Griffin* was a probationer, as opposed to a parolee. *See* 483 U.S. at 870, 107 S.Ct. 3164. Because we conclude *infra* that the warrantless search of Jones's home was constitutional according to the principles established in *Griffin*, we do not consider whether parolees are entitled to less protection under the Fourth Amendment than are probationers. *But see United States v. Cardona*, 903 F.2d 60, 63 (1st Cir.1990) (recognizing that "[o]n the [Supreme] Court's 'continuum of possible punishments,' parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers") (citation omitted) (quoting *Griffin*, 483 U.S. at 874), 107 S.Ct. 3164, *cert. denied*, 498 U.S. 1049, 111 S.Ct. 758 (1991).

cause. In the Court's view, probation, which is merely one point along a continuum of possible punishments, presents such special needs because it necessarily involves restricted liberty. The Court stated, "To a greater or lesser degree, it is always true of probationers (as we have said it to be true of parolees) that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.'" *Id.* at 874, 107 S.Ct. 3164 (quoting *Morrissey v. Brewer,* 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)) (alterations in original). The Court determined that the restrictions on liberty imposed by Wisconsin's probation system serve the dual goals of rehabilitation and protection of the public. *Id.* at 874–75, 107 S.Ct. 3164. The Court concluded that supervision "is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.* at 875, 107 S.Ct. 3164.

The Court then considered whether the specific Wisconsin regulation requiring "reasonable grounds" for a search was constitutionally justified by the special needs of Wisconsin's probation system. *See* 483 U.S. at 875–76, 107 S.Ct. 3164. The Court recognized that the Wisconsin Supreme Court had interpreted the "reasonable grounds" requirement to be satisfied by a tip from a police detective that Griffin "had or may have had" illegal firearms at his residence. *See id.* (citing *Wisconsin v. Griffin,* 131 Wis.2d 41, 388 N.W.2d 535, 544 (1986)). The Court held that the system's special needs made a warrant requirement impracticable and justified the replacement of a probable cause standard with the "reasonable grounds" standard defined by the Wisconsin Supreme Court. *See id.* The Court reasoned that a warrant requirement would interfere with the probation system by making a magistrate, rather than a probation officer, the probationer's supervisor. A warrant requirement would also introduce delay and slow the response of probation officials to evidence of misconduct and "reduce the deterrent effect that the possibility of expeditious searches

would otherwise create." Finally, such a requirement would interfere with the counseling relationship that is meant to develop between the probation officer and the probationer. *See id.* at 876–77, 107 S.Ct. 3164. Given these considerations, the Court believed it reasonable to dispense with the warrant requirement. *See id.* at 877, 107 S.Ct. 3164.

The Court also concluded that a probable cause requirement would "unduly disrupt[ ]" Wisconsin's probation regime. In this context, the Court recognized that a probable cause requirement would reduce the deterrent effect of supervision even more than a warrant requirement would because a probationer would be aware that his illegal activities would go undetected if he kept them sufficiently concealed. Moreover, in recognition of the fact that the supervisory relationship is "not entirely[ ] adversarial," *id.* at 879, 107 S.Ct. 3164, the Court concluded that "it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon" a showing of probable cause. *Id.* The Court believed that "[i]n some cases—especially those involving drugs or illegal weapons—the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society." *Id.*

▮ Jones argues that the above principles (which apply to parolees at least to the same degree as probationers, *see, e.g., Morrissey v. Brewer,* 408 U.S. 471, 483, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)), simply do not apply when the subject of a warrantless search is in the State's custody at the time of the search. Jones argues that *Griffin* is premised upon the State's need to protect the parolee and the public, and he contends that such concerns are not implicated when the parolee is already in custody. As a question of law, we review this issue *de novo. See Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). We reject the argument for a number of reasons.[4]

---

4. Although we have not previously addressed this

argument, we have upheld the constitutionality

It is a long-recognized principle that the contours of the Fourth Amendment's protection against unreasonable searches are defined by society's conception of an individual's "reasonable expectation of privacy." *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In the case of parolees and probationers, that expectation is significantly limited by the supervisory relationship and restrictions imposed on the individual by the State. *See, e.g., Griffin,* 483 U.S. at 873–75, 107 S.Ct. 3164; *Morrissey,* 408 U.S. at 480, 92 S.Ct. 2593. In Wisconsin, moreover, parolees are informed that as a condition of their parole they must consent to home searches ordered by a DOC agent, *see* § DOC 328.04(3)(k), and that their home can be subjected to a warrantless search upon reasonable grounds, *see* § DOC 328.21(3). Jones has offered no justification, nor can we think of any, as to why a parolee's reasonable expectation of privacy in his home is heightened when he is in the State's custody for the purpose of determining whether the supervisory relationship has broken down and the parolee has violated the conditions of his parole. Given the rehabilitative purpose of Wisconsin's parole system, *see Wisconsin v. Tarrell,* 74 Wis.2d 647, 247 N.W.2d 696, 700 (1976), as well as the State's interest in deterring and preventing unlawful conduct by its parolees, we do not believe that the State's special supervisory need is diminished when a parolee is in its custody, or that the parolee enjoys a heightened expectation of privacy in his home due to his custodial status.

Moreover, although Jones is correct that the Supreme Court's holding in *Griffin* was supported by the need to act quickly to prevent harm to the probationer and society, *see, e.g.,* 483 U.S. at 875, 876, 879, 107 S.Ct. 3164, we do not accept his twin premises that this is the only justification supporting *Griffin* and that the prevention of harm is not implicated when the parolee is in custody at the time of the search. First, as we have discussed, *Griffin* heavily relied on Wisconsin's interest in rehabilitating its probationers, as well as the close supervisory relationship that develops between the probationer and the probation officer, in concluding that Wisconsin's "reasonable grounds" regulation was constitutional. These interests are similarly implicated even when the parolee is in the State's custody at the time of the search.

Second, we do not believe that Wisconsin's interests in preventing and deterring harm to its parolees and to society are not implicated when the parolee is in custody at the time of the search. To take the instant case as an example, Jones lived with his three young children in an apartment in which his parole officer had reasonable grounds to believe that Jones had stored both firearms and cocaine. In these circumstances, the likelihood of Jones damaging society, *i.e.,* his children, is not diminished by his custodial status. The dangers that accessible firearms and narcotics can pose to children in the home are widely recognized. Thus, we believe that a parolee may present a continued threat to society even when he is in custody, and therefore the justifications recognized by the Supreme Court in *Griffin* maintain their significance.

Further, under Jones's proposed rule, the strange scenario may often result in which a parolee is held pursuant to § DOC 328.22(2)(a) (permitting the DOC to take a client into custody in order to investigate an alleged violation), but the supervisor does not have probable cause to search the parolee's residence for evidence of a violation. If the only evidence of a violation is contained within the parolee's residence, then the parolee would have to be released by the State after a short period of time (either 5 or 10 days). *See* § DOC 328.22(3). Of course, at the time of the parolee's release, the State could then conduct a search so long as it had reasonable grounds to believe that contraband was present in the residence. Following his release and before any search could be conducted, however, the parolee would present a threat to both society and himself. Alternatively,

---

of a "reasonable grounds" search of a Wisconsin parolee's residence undertaken while the parolee was in custody. *See United States v. Coleman,* 22 F.3d 126, 130 (7th Cir.1994). Two other courts of appeals have upheld the constitutionality of similar warrantless searches, also without addressing the argument presented in the instant case. *See United States v. Martin,* 25 F.3d 293, 296 (6th Cir.1994); *United States v. Hill,* 967 F.2d 902, 907–11 (3d Cir.1992).

the absurd situation of releasing the parolee and simultaneously beginning a search of his residence could occur, and a fruitful search would then require apprehending the parolee once again. In light of these considerations, we believe that Wisconsin's interests in preventing harm to the probationer and to society are fully cognizable even when the probationer is in the State's custody.

■ For the above reasons, we reject Jones's argument and conclude that Wisconsin constitutionally may conduct "reasonable grounds" searches pursuant to § DOC 328.21 even when the subject of the search is already in the State's custody.

### B. Additional Arguments Relating to Jones's Suppression Motions

■ Jones presents two additional arguments attributing error to the district court's denial of his motions to suppress. Jones argues that reasonable grounds did not exist to search his residence under § DOC 328.21(7) because Parole Officer Downey was not aware of and did not follow the requirements of Wisconsin's Administrative Code. We review the district court's findings of historical fact for clear error, and we review *de novo* the ultimate determination of "reasonable grounds." *See* Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996). As factual support for this argument, Jones points to cross-examination testimony elicited from Downey at the suppression hearing in the district court. Specifically, Jones argues that Downey was unable to recall the considerations governing the propriety of a reasonable grounds search as provided in the Administrative Code, and that she was unable to recall the Code provisions' numerical designations. Moreover, Jones asserts that Downey incorrectly believed that she was required to secure the approval of her supervisor's supervisor in order to conduct a search.

It is perfectly conceivable for a Parole Officer to satisfy the "reasonable grounds" standard without being able to enunciate the specific requirements of § DOC 328.21(7) from memory. Thus, the only consideration relevant to our constitutional decision is whether the search of Jones's residence was justified by "reasonable grounds" under Wisconsin law. As we have discussed, *see supra* at 682–83, at the time that Downey sought her supervisor's approval to conduct a warrantless search of Jones's residence, she knew that he was suspected of selling drugs from a car, that he reportedly possessed a gun with which he had threatened an ex-girlfriend, and that he had been arrested in a car in which crack cocaine was discovered. She related this information to her supervisor, who in turn related the information to his supervisor and obtained authorization to search. Given the Wisconsin Supreme Court's conclusion in *Griffin* that a tip from a police officer that the probationer "had" or "may have had" an illegal firearm at his home constituted the requisite "reasonable grounds," *see* 131 Wis.2d 41, 388 N.W.2d 535, 544 (1986), we have little difficulty in concluding that the instant search complied with Wisconsin's "reasonable grounds" standard. Moreover, Jones has not cited, nor have we located, any Wisconsin case offering a more narrow interpretation of the regulation. *Cf. United States v. Coleman,* 22 F.3d 126, 130 (7th Cir.1994). Furthermore, given the United States Supreme Court's holding in *Griffin* that Wisconsin's interpretation of the "reasonable grounds" regulation satisfies the Fourth Amendment's requirement of reasonableness, *see* 483 U.S. at 873, we conclude that the application of the regulation in the instant case was similarly reasonable under established Fourth Amendment standards.

■ Jones also points out that § DOC 328.21(f) prohibits an agent conducting a "reasonable grounds" search from using force in entering a locked, unoccupied residence. He argues that the DOC officers' use of his keys to search his apartment constituted an impermissible use of force and that the cocaine found within his apartment should therefore be suppressed. The Government responds by arguing that the appendix to § DOC 328.21, which further discusses home searches when the parolee is not present, states that an agent is permitted to enter in any way that does not damage the property.

■ The Government's response is not relevant to our constitutional inquiry. The

Fourth Amendment's exclusionary rule applies only to violations of the Fourth Amendment, and even then the Supreme Court has significantly limited the rule's application. *See Pennsylvania Bd. of Probation & Parole v. Scott,* —— U.S. ——, —— n. 4, 118 S.Ct. 2014, 2020 n. 4, 141 L.Ed.2d 344 (1998). While Jones's argument attempts to attribute constitutional status to the entirety of Wisconsin's regulations relating to warrantless searches, the Supreme Court explicitly noted in *Griffin* that its holding was premised solely upon the regulation that permits warrantless searches on "reasonable grounds." *See Griffin,* 483 U.S. at 880 n. 8, 107 S.Ct. 3164. The fact that other regulations may have been violated is not relevant to whether a Fourth Amendment violation has occurred. *See id.* In the instant case, we have already determined that the search of Jones's residence was conducted pursuant to a regulation that is constitutional. In light of this conclusion, it appears that the use of keys to enter the residence, as opposed to a more forcible means of entry, was the *most* reasonable means of gaining access to Jones's residence.

C. Ineffective Assistance of Counsel

■ Jones also argues that his trial lawyers were ineffective for failing to raise at his suppression hearings the first two of the three arguments discussed above. In addition, Jones contends that he received ineffective assistance at the suppression hearings because neither of his trial lawyers pointed out that Downey did not prepare a report detailing the search, as Jones maintains she was required to do under § DOC 328.21(3). Had this argument been made, Jones believes, a report would have been prepared that would have indicated that the search of Jones's residence was not supported by reasonable grounds.

■ We can dispose of these arguments in short order. In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate both that his

representation was deficient and that this sub-standard representation prejudiced his case. *See Strickland v. Washington,* 466 U.S. 668, 688–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We have on two recent occasions explained that ineffectiveness claims based on a counsel's performance in connection with a motion to suppress evidence does not constitute the type of prejudice contemplated by *Strickland. See United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir.1997); *Holman v. Page,* 95 F.3d 481, 490–92 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997).[5] Evidence that should have been suppressed but for counsel's incompetence nonetheless retains all indicia of reliability, while "[p]rejudice in the *Strickland* sense refers to 'unprofessional errors' so egregious 'that the trial was rendered unfair and the verdict rendered suspect.'" *Holman,* 95 F.3d at 491 (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). We accordingly reject Jones's ineffective assistance claims under the rule established in *Williams* and *Holman.*

For the foregoing reasons, we affirm the appellant's conviction and sentence.

---

**5.** We have noted, however, that instances of ineffectiveness at a suppression hearing could be used to support a claim regarding counsel's overall incompetence. *See Williams,* 106 F.3d at 1367 n. 2; *Holman,* 95 F.3d at 492. Jones's ineffectiveness claims are based solely on the performance of his attorneys in arguing the suppression motions.