| NONPRECEDENTIAL DISPOSITION |
| --- |
| To be cited only in accordance with Fed. R. App. P. 32.1 |

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 16, 2018[*]
Decided January 24, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-1006

| | |
| --- | --- |
| CHARLES W. POLLOCK, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 16-CV-1020 |
| | |
| UNITED STATES OF AMERICA, | James E. Shadid, |
| *Respondent-Appellee*. | *Chief Judge*. |

**O R D E R**

After we affirmed his conviction and 20-year sentence for unlawful possession of a firearm by a felon, unlawful possession of ammunition by a felon, and attempted witness tampering, *see United States v. Pollock*, 757 F.3d 582, 586 (7th Cir. 2014), Charles Pollock filed a collateral attack under 28 U.S.C. § 2255. We granted Pollock a certificate of appealability allowing him to appeal his claim that his attorney provided constitutionally deficient representation at the sentencing hearing. Because Pollock's

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

attorney exercised professional judgment in not calling certain witnesses, the ineffective-assistance claim fails, and we affirm the denial of his § 2255 motion.

In June 2011, Pollock went with his then-girlfriend, Kim Bowyer, to his mother's home to retrieve some of his guns, which, because of a felony conviction for aggravated stalking, Pollock was not allowed to possess. They carried several guns out of the house and placed them in the trunk of Pollock's car.

One month later, Bowyer called the police and reported that Pollock had forced her out of her home, dragged her into his car, drove to his house, and then raped her. Afterwards Pollock fell into a depressed state, recounting all the evidence of kidnapping and rape that she had against him, and guessed that her daughter already had called the police. Bowyer first told the police that Pollock said he was going to kill himself with the pistol he had in the garage, but when she described the incident to police a second time, Bowyer said that Pollock suggested they both commit suicide.

Pollock was arrested after the police found ammunition in his home in the course of investigating Bowyer's complaint. They later found guns that Pollock had stored at his home because they monitored Pollock's call to his friend Todd Clayes and heard Pollock ask Clayes to remove the "stereo" from his car. When questioned by the police, Clayes admitted to retrieving the guns at Pollock's request.

Pollock was prosecuted in state court and was acquitted of all charges related to the kidnapping and rape of Bowyer. But a federal grand jury indicted Pollock for unlawful possession of a firearm and unlawful possession of ammunition. Later, he also was charged with attempted witness tampering because he sent a letter to Clayes encouraging him to dodge a subpoena to testify at Pollock's federal trial. At trial, a jury found Pollock guilty of all three offenses.

Three attorneys represented Pollock along the way. In this appeal we focus solely on attorney Anthony Vaupel, who represented Pollock during the six months preceding the trial, at trial, and at the sentencing hearing. (Although Pollock's § 2255 motion raised claims about his other attorneys, and in his appellate brief's question presented he mentions other stages of the case, Pollock focuses exclusively on Vaupel's performance at sentencing in the body of his brief.)

At the sentencing hearing, Bowyer testified at length about the abduction and rape. The parties had agreed not to discuss that event at trial, but it was relevant to the sentencing stage because the government recommended that the judge apply the

cross-reference in U.S.S.G. § 2K2.1(c). Under that section, the district court assigns a higher base offense level when the defendant used or possessed the firearm "in connection with the commission or attempted commission of another offense." U.S.S.G. § 2K2.1(c)(1)(A). The government argued that the district judge should consult the guideline for criminal sexual abuse because of the kidnapping and rape.

Vaupel argued that the cross-reference for criminal sexual abuse should not be applied because the government had not shown by a preponderance of the evidence that he had committed criminal sexual abuse, especially in light of the state-court acquittal. The conduct also was not "temporally proximate" to Pollock's possession of any firearm, Vaupel argued, because Bowyer testified that she did not see a firearm the night of the sexual abuse. At most, Vaupel insisted, Pollock mentioned that he had a gun and suggested they both commit suicide. Vaupel also attempted to discredit Bowyer by pointing out inconsistencies in her testimony. He emphasized that Bowyer had testified inconsistently about another incident earlier that year when Pollock allegedly stole her truck. Bowyer had also said under oath that she never communicated by text message with Pollock, but then testified that Pollock sent her threatening text messages.

The judge applied the cross-reference, reasoning that Bowyer's testimony adequately showed that Pollock had threatened her with a murder-suicide by mentioning his pistol shortly after he forced her to have sex with him. The judge sentenced Pollock to 240 months' imprisonment, consisting of three 120-month sentences, two of which (the felon-in-possession convictions) would run concurrently. We affirmed Pollock's sentence on appeal. *Pollock*, 757 F.3d at 590–93.

Pollock filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that he received ineffective assistance of counsel in violation of the Sixth Amendment at every stage of his case. The judge directed the government to respond, and the government provided affidavits from each of Pollock's attorneys denying the allegations. In an addendum to his reply brief, Pollock specified that Vaupel's performance at sentencing was deficient because he failed to call witnesses who could have discredited Bowyer's testimony. Pollock focused on Jack Strader, a former boyfriend of Bowyer, who would testify that she had falsely accused him of harming her over a decade earlier. The district judge denied Pollock's motion; the judge explained that Pollock had provided no evidence to support his allegations, such as a sworn affidavit or Strader's proffered testimony from the state-court trial. We granted Pollock's request for a certificate of appealability, allowing him to proceed on his claim that sentencing counsel was constitutionally deficient.

In evaluating the denial of Pollock's § 2255 motion, we review the district court's factual findings for clear error and its legal conclusions de novo. *See Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008). We analyze Pollock's ineffective-assistance claim by asking (1) whether he showed that "counsel's representation fell below an objective standard of reasonableness" and (2) whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

On appeal, Pollock first argues that Vaupel provided ineffective assistance of counsel at sentencing because he did not call Strader as a witness. He also contends, for the first time, that Vaupel should have called Shandelle Henderson (Bowyer's daughter) and the two police officers who responded to her phone call reporting her mother's kidnapping. Henderson, according to Pollock, admitted at the state trial that Bowyer had encouraged her to falsify her testimony; it is not clear what favorable testimony he supposed the officers would give. He asserts that Vaupel's affidavit is so vague that it compels the conclusion that Vaupel did not investigate these potential witnesses. Pollock also faults Vaupel for not arguing that his criminal history category for sentencing purposes should have been III, not IV.

Based on the record before us we cannot conclude that Vaupel provided ineffective assistance of counsel by not calling Strader. In his affidavit, Vaupel states that he reviewed the transcripts of the state-court trial and that he met and talked to "various witnesses." Strader is not named, but that does not mean that "we have to conclude," as Pollock argues, that Vaupel never investigated whether Strader would provide helpful testimony. His choice not to call Strader seems to have been strategic; Vaupel avers that "no witnesses supported Mr. Pollock's version of events or substantially refuted any aspect of the government's case." *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997) (A lawyer's "decision not to call a witness at sentencing is strategic and is 'generally not subject to review.'") Vaupel had no obligation to call every potential witness, particularly on a collateral issue.

Pollock's arguments that Vaupel should have called Bowyer's daughter and the police officers to testify at the sentencing hearing are defaulted. Pollock did not mention Bowyer's daughter in any of his district court filings, and said only that Vaupel "could have called" the police officers. Pollock has not shown that he has cause for the default, or that he was prejudiced. *See McCoy v. United States*, 815 F.3d 292, 295 (7th Cir.), *cert. denied*, 137 S. Ct. 260 (2016).

But even if we were to consider these arguments, they would fail. Pollock gives us no reason to question Vaupel's assertion that *no* witness had favorable testimony to give at the sentencing hearing, and it takes more than Pollock's bald assertions to show that the sentencing picture would have looked different with the testimony of these witnesses. *See Strickland*, 466 U.S. at 699–700.

To bolster his claims, Pollock filed a motion in this court to supplement the record with an affidavit from Strader stating that Bowyer wrongfully accused Strader of domestic violence in 1998. But this affidavit was not omitted from the record on appeal "by error or accident," FED. R. APP. P. 10(e)(2)(C); it is not in the record because it was never filed in the district court and Pollock did not ask the district judge for leave to supplement the record. *See Midwest Fence Corp. v. United States Dep't of Trans.*, 840 F.3d 932, 946 (7th Cir. 2016) (explaining that Fed. R. App. P. 10(e) provides no ground for appellate court to admit on appeal any document which was not made a part of the record in the district court.). Pollock's motion to supplement the record is DENIED.

We have considered Pollock's other arguments (including his claim that Vaupel should have objected to the criminal history category, an objection that Vaupel, in fact, made in his sentencing memorandum) and conclude that none has merit. Therefore, the decision of the district court is AFFIRMED.